Per Curiam.

To decide this case, it is not necessary to determine the question, whether the deputy sheriff was a competent witness or not; although that question has been raised and discussed at the bar. It was the duty of the sheriff to make the levy without any indemnity whatever, as he found the goods in the hands of the defendant in the execution; and he would not have been liable to an action as a trespasser, if he had made such levy. The goods were pointed out to him as the goods of the defendant in the execution; he was exercising acts of ownership over them; they were in his exclusive custody and possession ; and the sheriff would have incurred no peril from the act of Ievy~ing. If, after the officer’s first duty was performed, a claim to the property had been interposed, then a jury should have been called to determine the right of property. If, by the inquisition. *596 it should be determined that the property was in the claimant, then the return upon the execution should be nulla bona ; and gucfi a finding, although it would not be conclusive upon the question of property, would nevertheless justify such a return. Should the jury declare the property to be m a third person, then the sheriff could not be compelled to proceed further, without a full indemnity. But, in the first instance, he was bound to make a levy, and there is nothing in this case to excuse his neglect in that particular.
The sheriff need never be in difficulty upon this point: for if "the title appear doubtful, or the proceedings hazardous, the court, upon application, would extend the time for the making of his return; or he might file a bill of interpleader, and stay all proceedings against him, until the right of property was settled. Indeed, the conflicting claimants could be compelled to litigate their claims ; and a sheriff, taking the proper course, would never be subjected to damage of any kind.
In this case, the sheriff refused, or, at all events, neglected, to make the levy; and if the plaintiff" can show that the goods found in the possession of the defendant in the execution, were in truth his property, he is entitled to recover. To determine this question, we have merely to examine the assignment to Stewart; for if the property in the goods did not pass to him, then it remained, beyond all doubt, in the defendant in the execution; for nobody but Stewart has interposed a claim to it. It is evident, from the testimony adduced, that the assignment to Stewart was fraudulent. It bears about it those characteristics which generally indicate fraud. In the first place, the goods were left in the hands,-and under the exclusive controul, of the assignor. This ia always such evidence of property in the possessor, that it throws upon the assignee the duty of explaining satisfactorily, why the goods assigned were left in the hands of the assignor : why delivery, which is in most cases essential to pass the title of chattels, did not accompany the act of transfer. It is true, there may be cases where mortgaged property may be left, for good and sufficient reasons to be shown to the court, in the hands of the mortgagor* But the intent of the transfer ought to appear upon the *597 instrument of assignment, and if upon the face of the instrument the transfer is absolute, it will throw upon the claimant the whole burthen of explaining why possession did not follow the transfer.
In the present case, the claimant and the sheriff have not even attempted to show why ¡he goods were left in the hands of Hick-cox; why he controuled them; why he sold the goods, and received the money for their proceeds. Here is enough to show the real nature of the assignment, and its objects may be easily guessed, when we look at the date of the instrument, and compare it with the time when the judgment was docketed. The latter precedes the former by several days, and the inference is irresistable, that the object of the assignment was to deieat the execution. The court, in this matter, act also in the place of a jury, and upon every principle of law, as well as inference from facts, vve are all of opinion, that the assignment is fraudulent, and therefore void. It is proved, then, that the property remained in Hickcox : it was in his hands on the day when the sheriff’s deputy proceeded to his store ; it was pointed out to the deputy as the property of Hickcox, and he was desired to -e'< y upon it. It was a plain case, and the sheriff’s duty was obvious : it could not be mistaken. But he neglected that duty, and must respond to the complainant for the consequences of that neglect.
There is one more question to be disposed of, in order to meet all the objections to a recovery, and that relates to the execution itself. We consider that the endorsement made by the sheriff is conclusive evidence, that the execution was in his hands at the time the deputy went to the store to make the levy, and this by the operation of the statute. It is his duty to endorse upon the execution the time when it was received, and here the defendant cannot deny, what he has admitted to be true. There could be no difficulty, therefore, in identifying the execution, without a recourse to the testimony oí Westervelt; and we therefore disregard that evidence in this part of the case. The sheriff or his deputy, (and it matters not which, as the sheriff is responsible for the official acts of his deputy,) had this execution on the 29th of December, 1826, and assumed to act under it. He cannot, there *598 fore, gainsay the proof furnished by his own acts, but is conclusively bound by it.
There must be judgment for the plaintiff upon the case, for the amount assessed by the jury.
Mr. Justice Hoffman observed, that he was satisfied, upon further reflection, that there was no necessity for calling Westervelt as a Witness, and he concurred in the opinion of the court in all its parts.
Judgment for the plaintiffl