Edmonds, J.,
delivered the opinion of the court.
It does not appear from the ease whether the persons named in the statute were the riparian owners, nor whether they were to take the land grants as such. The case, however, throughout, treats the question as one between riparian owners, and settling riparian rights, and probably ought so *364 to be regarded by us, though we have no certain means of knowing that it is so.
At all events, as at present advised, it seems to me proper to look at it in that point of view only.
The true mode of dividing the land under water thus granted, was to assume the water line established by these acts of the legislature as the base. And as it had in it one indentation, namely, that at the extension of the central line of Harrison street, the true base should be ascertained by drawing a line between the two extreme points of the grant, in the general direction there given, and so as to equalize the quantity of granted land on both sides of that line.
Adopting this as a base, each riparian owner is to have his proportion of the outer or water line, according to the length of his shore line. Thus, as the whole shore line is to the whole water line, so is each one’s share of the shore line to each one’s share of the water line.
It may be necessary for. practical purposes, that slight indentations in the shore line should be disregarded, and a general line of the shore adopted. But it is unnecessary to consider that here, because that would affect quantity more than it would the exterior lines of each proprietor, and would not be material or necessary in determining the questions involved in this suit.
The doctrine as to lands formed by alluvion is well applicable in principle to the case in hand. That is laid down in Angel on Tide Waters, 258, thus: “ measure the whole extent of the line on the river and ascertain how many feet each proprietor owned on this line, divide the newly formed line into equal parts, and appropriate to each proprietor as many of these parts as he owned feet on the old line, and then draw lines from the points at which the proprietors respectively bounded upon the old, to the points thus determined as the points of division on the newly formed line.” This rule is to be modified under particular circumstances; for instance, if the ancient margin has deep indentations or sharp projections, the general available line on the river ought to be *365 taken, and not the actual length of the margin as thus elongated by the indentations or projections. And he cites a work of the civil law entitled, “ Collection of new Decisions by Denis-art.” (Durfield v. Army, 17. Pick. R. 41; Sparkhawk v. Bullard, 1. Met. R. 95.)
Now, whether that base be taken, or the general line of the shore he adopted as the base, it is evident that the defendant’s lines would run in the direction he claims, and not in the direction claimed by the plaintiffs. Not in precisely the same direction in both instances, but sufficiently so to defeat the plaintiffs claim.
The two maps, hereto annexed, show the operation of the two modes of apportioning the land under water among the riparian owners.
Then the question recurs, for what reason should we depart from these principles, or one of them?
One reason given is, because all the riparian owners are not parties in the suit, and neither principle can be carried out without them. That may be a good reason for dismissing the bill for want of parties, or staying the hearing until the • necessary parties can be brought in, but is not a good reason for deciding the case upon wrong principles.
Another reason is, that if the defendant and his associates have their full quantity of front, they cannot be allowed to disturb the settlements made by the other proprietors, for the sake of establishing a boundary based on an abstract rule. I cannot acknowledge the force of this objection. For the defendant may have a right to the application of the abstract rule, of which he cannot be deprived by settlements of others to which he was no party, and that abstract rule may give him a particular location of great value, which cannot be satisfied by giving him .his quantity of less value elsewhere.
Another reason is, that he has acquiesced in those settlements by others, and therefore ought not now to disturb them.
This, it seems to me, is the important question in the case, and upon this point alone, if any, is he to be precluded.
*366 The settlement thus referred to, took the line of the streets as the basis, and gave to each one the front under water marked out according to those lines. Thus, the defendant, instead of running diagonally across Harrison street, and taking in the lands under water claimed by these plaintiffs, and perhaps also those claimed by Johnson, and by Wood & Havermeyer, as he now claims, would run out parallel with the center line of Harrison street, being the location which the plaintiffs insist ought to be adopted.
• This would undoubtedly, as was suggested, be more convenient to many of the parties, and not give rise to the disturbance and litigation which might flow from the opposite course, but still the dread of those consequences must not control our decision, unless we can find in the evidence that it has influenced the defendant, in bringing about his alleged acquiescence, which we are now to inquire into.
It is a conceded fact that the defendant has laid out his land, as well under water as his upland, according to the line of the streets, and thus has taken to himself as his front, the land under water in front of him according to those streets, and not according as he now claims, and he has conveyed and improved accordingly. In the complaint it is alleged that he did this in execution of the division of the land under water, to which all the proprietors had agreed. In the answer he denies that it was done for any such purpose, but merely for the purpose of dividing his lands into streets, squares, and avenues, agreeable to the laying out of streets, etc., made by the commissioners appointed for that purpose.
But there are two important considerations which tend to show that the allegation of the complaint in this respect must be true.
One, that he has included in his map, in his improvements, and in his conveyances, land under water, to which he would have no title' if his present claim is allowed, and to which he has title only by reason of his acquiescing in the settlement to which it is now sought to confine him.
The other is, that ,he has allowed other parties claiming *367 according to that settlement, to occupy, improve, and build on the land which he now claims, and to which those other parties would have had no right, if his claim is allowed, and their right to which is founded on that settlement alone.
It is true, he may not be estopped as regards these plaintiffs, from setting up his claim against them, because .they have not been induced by his silence to make any improvements, but though these acts of his may not work an estoppel against him, they may be properly referred to, as pretty strong evidence of acquiescence.
There is another consideration connected with this which is entitled to some weight, and that is, that all the other riparian owners have taken their respective shares according to this settlement, and without any objection on his part, so that there is just enough of the land under water left, to answer the call of both the parties to this suit, provided it is to be taken according to the principles of that settlement; and now by allowing the defendant his present claim, he on one of his boundaries cuts off the plaintiffs entirely from any water front, and on the other, takes, to himself land which the proprietors on that side have abandoned to him in execution of that settlement, and to which otherwise he would have no right.
Now it may be, for ought we can see in this case, that all the other proprietors are fixed and settled in their respective rights as to each other, and as to the defendant, and to allow his present claim, would enable him to claim the advantage ' of the settlement by reason of his agreement to it, as a party to it, and on the other hand, to repudiate it, and thus enjoy the advantage of both sides of that question. It may. be that he has a right to such consequences, but I refer to them to show the probability of his acquiescence, which I am now seeking for.
It would be difficult to conceive that the defendant did not know of, and acquiesce in the settlement. He was a large owner of the adjoining shore, in his own interest, and in trust for others; he is named in the statute, with others, as the grantee of the water rights; he saw those others proceeding *368 to partition among themselves; he made partition with his co-owners upon the same principle; he laid ont his lands into streets and lots upon the same principle, and gave, and received deeds, that fully carried it out, and thus publicly to all the world, proclaimed his assent to it, and he appropriated to himself lands to which he had no right, except what he derived from that settlement.
The case, therefore, seems to me that of two adjoining pro prietors, who settle by agreement among themselves the dividing line of their respective lands, and for some time act accordingly; and in such case neither party is afterward at liberty to depart from the arrangement.
It is upon the doctrine of acquiescence in the dividing line between adjoining estates, and not upon that of estoppel or adverse possession, that I think the defendant is barred of his present claim, and it seems to me that his acquiescence may well be presumed from his various acts as detailed in this case.
The doctrine of acquiescence is well recognized in the law, as an admission by the party. But to have that effect it must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct or language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party before any inference can be drawn from his passiveness or silence. But where those ingredients are found, the acquiescence becomes as binding as any other admission of a party. (1 Greenl. Ev. § 197.) Thus the entry on an account book against a particular person, or making out a bill of parcels in his name, is an admission that the goods were furnished on his credit. (Storr v. Scott, 6. C and P. 241.) So where A pointed out one-fifth of certain property as belonging to the defendant in an execution, A owning the other four-fifths, he is to be regarded as admitting the ownership of the one-fifth. (Stephens v. Baird, 9 Cow. 274.) So where a man declared to be a bankrupt intro *369 duced his assignee to an auctioneer, he is concluded from denying his bankruptcy. (Clarke v. Clarke, 6 Esp. 61.) To the same effect are Morgans v. Bridges (1 Barn. & Ald. 650) ; Williams v. Lownders (1 Hall, 579) ; Davenport v. Wheeler (7 Cow. 231); Jackson v. Vedder (2 Caines, 211); Welland Canal Co. v. Hathaway (8 Wend. 483); Phillips v. Hall (8 Wend. 610).
It is upon this principle that I am of opinion that the judgment ought to be affirmed.
Ruggles, Ch. J., and Gardiner, Johnson, Welles and Watson, J. S., concurred. J ewitt, J., did not hear the argument. Judgment affirmed.