WALTER T. HATCH et al., Respondents, *v.* GEORGE B. ELKINS
et al., Appellants.

The declarations of a principal, made subsequent to the act to which they
relate, and not as part of the *res gestæ*, are not competent evidence
against his surety.

Defendant E. executed to plaintiffs a bond and mortgage under a con-
tract by which they agreed to secure to and indemnify plaintiffs from
loss upon an account with B.   In an action to foreclose the mortgage
wherein the only question was as to the balance due upon the accounts,
plaintiffs, after proof that two statements of accounts had been deliv-
ered to B., offered them and they were received in evidence, under
objection and exception.   They also were permitted to give in evidence,
under objection and exception, a letter written by them to B., after the
account was closed, stating the balance due, and an indorsement thereon
by B. admitting it to be correct.   *Held*, error.

*Bullock* v. *Boyd* (2 Edw. Ch., 293); *Fenner* v. *Lewis* (10 J. R., 38); *Douglass*
v. *Howland* (24 Wend., 36) distinguished.

(Submitted May 7, 1875; decided June term, 1875.)

APPEAL from the judgment of the General Term of the
Supreme Court in the second judicial department affirming a
judgment in favor of plaintiffs, entered upon the report of a
referee.

This action was brought to foreclose a mortgage made by defendants which, on its face, was to secure the payment of $7,500 and interest, on the first day of January, 1870, and which covered certain lands situated in Brooklyn.

In 1869 the plaintiffs were brokers, doing business in the city of New York, and prior to April twenty-eighth of that year they had made short sales of stocks and bonds for one Badger, and he was on that day short with them 400 shares of New York Central Railroad stock and $10,000 United States bonds of 1867, and his margin to secure them for carrying this stock and the bonds was exhausted. On that day the plaintiff and defendant C. B. Elkins made in writing an agreement, of which the following is a copy, to wit:

"This agreement, made this 28th day of April, 1869, between George B. Elkins, of the city of Brooklyn, party of the first part, and Messrs. W. T. Hatch & Son, bankers, of the city of New York, parties of the second part, witnesseth:

"Whereas, W. W. Badger, of the city of Brooklyn, is indebted to the parties of the second part, as his brokers, on account of certain transactions in buying and selling stocks and bonds for him, and they are liable also to future losses as such brokers in said transactions, being short sales for his accout of 400 shares of New York Central Railroad stock, and $10,000 at par of United States 5-20 bonds, the margin on which, agreed by said Badger, to be at all times kept good at ten per cent above the market value of *said* stock and bonds is now exhausted.

"*Now*, the party of the first part hereby agrees with the parties of the second part, in consideration that they defer buying to cover said short sales, as herein provided, to indemnify them against all losses or damages which they have sustained or may sustain, by so doing as herein provided; and, as further security, he hereby authorizes them to sell at public auction, in the city of New York, a certain bond and mortgage of John Bentley, for $3,500, to the party of the first part, already assigned to them as security against such losses

or liabilities, upon their giving him ninety days' notice in writing, of the amount of their loss on the closing of the account of said Badger, by the purchase of said New York Central Railroad stock and bonds to cover such short sales; and of their intention, unless such amount is paid to them within that time, to make such sale of said bond and mortgage to reimburse themselves.

" And the party of the first part further agrees to execute and deliver to the parties of the second part, his bond for the sum of $7,500, payable on the first of January next, with interest at seven per cent, payable on the first of August and first of January next, secured by his mortgage, in which his wife shall join, upon the premises described as follows : One lot on the southerly side of Pacific street, near New York avenue; twenty lots on Crown and Carroll streets; and two lots on St. Marks place, in said city of Brooklyn — to be particularly described in said mortgage — as further securities to the parties of the second part against all such losses and liabilities on account of said W. W. Badger.

" And the parties of the second part agree that so long as the said bond and mortgage of John Bentley and the bond and mortgage of the party of the first part for $7,500, shall at par constitute a margin of ten per cent, as aforesaid, they will defer buying the said New York Central Railroad stock and the said bonds for account of said Badger, provided, that upon examination, the titles of the said mortgaged premises shall be approved by the counsel of the parties of the second part, and shall be found free from all incumbrances and liens, except a prior mortgage of $4,500 upon the premises covered by said Bentley's mortgage; and provided, also, that the said parties of the second part shall in no event be bound to defer such purchases to cover said short sales beyond the said first of January next.

" And the party of the first part agrees that in case the said bonds and mortgages so assigned and given shall at any time before that date fail to constitute a margin of ten per cent, as aforesaid, the party of the first part shall, on demand, place

with the parties of the second part, or assign to them, further securities, being first mortgages on real estate, satisfactory to them, to keep such margin good; and in case the said mortgages of Bentley and the party of the first part are not approved by the counsel of the parties of the second part, the party of the first part shall substitute other securities upon real estate, also satisfactory to them.

"It is further agreed, that the said bond and mortgage of the party of the first part, for $7,500, shall be executed, acknowledged and delivered to the parties of the second part on the twenty-ninth instant.

"In witness whereof, the parties hereto have set their hands and seals the day and year first above written.

"G. B. ELKINS,

"W. T. HATCH & SON."

The mortgage in suit was given in pursuance of this agreement. Thereafter, Badger desired, through plaintiff, to buy in the stock of which he was short, and resell it again at an advance, to make up his loss; and to facilitate this arrangement, Elkins executed to the plaintiffs an instrument of which the following is a copy:

"NEW YORK, *May* 8, 1869.

"I hereby reaffirm my verbal ratification of the purchase of 100 shares New York Central Railroad, made by W. T. Hatch & Son for account of W. W. Badger, on account of the 400 shares referred to in our contract, and authorize them hereafter to follow the written instructions of said Badger to resell this 100 shares, if at a price higher than that at which it was purchased, and to purchase at any time upon this account any further portion of the said 400 shares of New York Central Railroad and 10,000 5-20 bonds of 1867, and to resell the same amount, also, upon Badger's written instructions, if at an advance price, and to repeat the process until I revoke this authority in writing.

"G. B. ELKINS."

Previous to this, on the third day of May, Badger had executed and delivered to the plaintiffs an instrument, of which the following is a copy:

"Messrs. W. T. HATCH & SON:

"GENTLEMEN. —Whereas you have, at my request, borrowed for me 400 shares N. Y. C. R. R., and 5-20 U. S. bonds of 1867, $10,000, and sold the same at my request, holding, as collateral security thereon, government bonds from me, viz.:

5-20's, 1874...................................... 3,000
5-20's, 1867...................................... 1,000
5-20's, 1865 (new) .............................. 3,000

And a certain mortgage upon real estate, upon five lots of ground, corner Dean street and New York avenue, in the city of Brooklyn, given you by G. B. Elkins, with his guarantee to protect you against any loss by continuing to borrow for my account the said securities, viz.: 400 shares N. Y. Cent'l R. R., and $10,000, 5-20 bonds, 1867, until January 1, 1870, unless I sooner direct you to purchase and return the same; and the further agreement, on the part of said Elkins, to give further satisfactory first mortgages to keep the security in your hands fully ten per cent above the current price for said N. Y. Cent'l and 5-20 bonds.

"I hereby authorize you, without any notice to me, to purchase the 400 shares N. Y. Central and the $10,000 5-20 bonds, 1867, whenever you can do so at a rate which will release all the collateral securities in your hands, both mortgages and 5-20 bonds.

"And I further authorize you, without any notice to me, to purchase at the regular board of brokers, or at private sale, the 400 shares N. Y. Central R. R., and $10,000, 5-20 bonds, 1867, or any portion thereof, at your discretion, if, at any time, the margin should be reduced below $5,000, estimating the N. Y. Central R. R., and 5-20 bonds, 1867, and the 5-20 bonds held as collateral at the then current market-price, and the mortgages at their face, provided said G. B. Elkins omits to give the needed additional security, in accordance with the contract referred to.

"It is, of course, understood that you are to debit my account with whatever it may cost to borrow either the N. Y. Central or the 5-20 bonds, and should it happen that either of them could not be borrowed, you are hereby authorized to procure the same by purchasing for cash, and selling regular, charging my account with the difference.

"WILLIAM W. BADGER."

On the twenty-seventh day of April, there was due plaintiffs, as claimed by them, upon Badger's short account, nearly $8,000.

After the execution of the last two papers, plaintiffs bought New York Central stock upon the written instructions of Badger, and sold the same again at a higher price, so that the balance due September 30, 1869, upon the short account, as claimed by plaintiffs, was about $6,000, and that balance, with interest, remained unpaid January 1, 1870. To secure this balance, the plaintiffs held the mortgage in question and the Bently mortgage.

There was no complaint upon the trial that the plaintiffs had not, in all respects, performed their engagements with Badger and with Elkins; and the only question litigated was, the amount due the plaintiffs upon their short account with Badger on the 1st day of January, 1870.

The referee found that there was due the plaintiff upon that account, and secured by the mortgage in suit, the sum of $3,573.20, after deducting the amount of the Bently mortgage which had been paid to the plaintiffs.

The plaintiff produced upon the trial an account with Badger, showing that there was due them from him, upon their short sale transactions, April 27, 1869, the sum of $8,481.02, including $866.85, balance of a long account which had been previously rendered to Badger, and they proved, by their clerk, that they delivered this account to Badger about July 1, 1869. They also produced another account, commencing with this balance and carrying the same account down to September 30, 1869, showing a balance then due

them of $6,673.81, and proved, by their clerk, that they sent this account to Badger in October, 1869. Plaintiffs' counsel then offered these accounts in evidence, and defendants' counsel objected to them on the ground that they were not evidence against Elkins. The referee overruled the objection. Defendants' counsel excepted, and the accounts were read in evidence. Plaintiffs' counsel also offered in evidence their letter addressed to Badger, dated January 3, 1870, inclosing statement therein referred to, and also Badger's reply written thereon, of which the following are copies:

" Dear Sir. — We inclose you herewith statement showing balance of account due us 31st December, 1869, upon which day our agreement with Mr. Elkins ceased, same to become due and payable, $6,793.20. Please give same your early attention and oblige.

      " Yours respectfully,

        " W. T. HATCH & SON."

" W. T. Hatch & Son :

" The above statement is correct. I desire you to realize the amount from the collateral in your hands, in accordance with the contract.

        " Yours truly,

         " W. W. BADGER.

" *January* 3, 1870."

These letters were objected to by defendants' counsel upon the ground that they were not evidence against Elkins. The objection was overruled, defendants' counsel excepted, and the letters were read in evidence. Further facts appear in the opinion.

*Henry E. Knox* for the appellants.

*Thos. H. Rodman* for the respondents. The written statements rendered, accompanied by a written acknowledgment that the balance was correct, were competent and sufficient evidence of the amount of the loss. (*Bullock* v. *Boyd*, 2 Edw.

Ch., 293; *Fenner* v. *Lewis*, 10 J. R., 38; *Meade* v. *McDowell*, 5 Bing., 193; *Douglass* v. *Howland*, 24 Wend., 35, 59.)

EARL, C. There was very little proof (and that controverted) except the admissions of Badger that the accounts thus received in evidence were true, and that the balance claimed was justly due, and hence the material inquiry is, whether the evidence thus objected to was competent? The claim is made by the learned counsel for plaintiffs, that the relations between Badger and Elkins were such that the admissions and acknowledgment of the former as to the amount due from him to the plaintiffs upon the short account are competent and sufficient evidence against the latter to establish the fact. I cannot doubt that this claim is not well founded. Badger was in no sense the agent of Elkins, in his dealings with plaintiffs. He was principal in all his transactions with them, and hence the rules of law applicable to the admissions of agents have no application to this case. Elkins was surety for Badger to the plaintiffs. He had bound himself by his agreement with them dated April 28, 1869, " to indemnify them against all losses or damages " which they had sustained or might sustain by acting as Badger's brokers in the short sales of stocks and bonds. In such a case the party holding the indemnity claiming loss against his indemnitor must prove it by evidence competent against him. He cannot prove it by the mere admissions or statements of the principal, however formally made. The declarations of the principal made during the transaction of the business for which the surety is bound, so as to become part of the *res gestæ* are competent evidence against the surety; but his declarations subsequently made are not competent. It is said, in 1 Greenleaf's Evidence (section 187), that " the surety is considered bound only for the actual conduct of the party, and not for whatever he might say he had done, and therefore is entitled to proof of his conduct by original evidence when it can be had, excluding all declaration of the principal made subsequent to the act to which they relate." In *Evans* v. *Beatties' Executor* (5 Esp.,

26) the defendants' testator had undertaken and promised the plaintiffs to guarantee them the payment for such goods as they should send to one Coppee in the way of their trade. Upon the trial plaintiffs offered to prove the delivery of certain goods to Coppee by his admissions. This evidence was objected to and it was argued for plaintiffs that the liability of the testator depending on the extent of the debt due by Coppee by which the testator had made Coppee's debt his own, what would be evidence to charge Coppee should be evidence to charge the testator; and as his omissions would be sufficient as against himself, it should be so against the defendant. Lord ELLENBOROUGH ruled "that what Coppee had been heard to say was not sufficient evidence to charge the defendant. The engagement was to pay for such goods as should be delivered to Coppee, not which he should acknowledge to have received." Here the engagement was substantially to pay the loss Badger should actually cause the plaintiffs, not that which he should acknowledge he had caused them.

The authorities to which plaintiffs' counsel has called our attention fall short of sustaining the claim made by him. In *Bullock* v. *Boyd* (2 Edw. Ch., 293) the complainant, on the 10th day of November, 1827, assumed the indebtedness of one Lampson to the defendants, and entered into a covenant with them to pay it. On the 10th day of October, 1827, Lampson and the defendants had had a settlement of their accounts and a balance was struck which Lampson then acknowledged, at the foot of the account, to be correct and justly due. The amount of the indebtedness of Lampson to the defendants was thus fixed by the act of the parties, and the balance due to the defendants was as thoroughly established as if Lampson had given them his note for it. It was this balance which the complainant assumed to pay, and the vice-chancellor held that the complainant was bound by a settlement thus made which was binding upon the parties thereto. If the defendants had offered to prove a settlement, or statements made subsequently to the promise of the complainant, a different question would have been presented. In *Fenner* v. *Lewis* (10 J. R., 38) the

plaintiff and his wife agreed, by articles, to live separate, and the defendant, as trustee and surety for the wife, covenanted to pay the plaintiff a sum of money upon his delivering to the wife a carriage and horses for her separate use, and it was held, in an action by the plaintiff for the money, that the wife's admissions of the receipt by her of the carriage and horses were admissible. The decision was placed upon grounds which will not aid the plaintiffs in this case. It is said in the opinion, that "both parties by the covenant concurred in her capacity to receive those articles, and she became for that purpose their mutual agent. Her declarations or confessions, that the act was done, became legal evidence of that fact as a necessary consequence of her authority, under the articles to receive the coach and horses ; for no principle would seem to be more clear, than that the person to whom performance of an act is agreed to be made is competent to acknowledge such performance. If she was competent to receive she was competent to give a receipt for them, and if her receipt would have been good evidence of the delivery, her parol admission must be equally so." In *Douglass* v. *Howland* (24 Wend., 36) one Brigham had agreed in writing, to account in reference to certain matters with the plaintiff, and pay to him such sum as should be found due him upon such accounting, and the defendant covenanted with plaintiff, that Brigham should faithfully perform the agreement on his part. The plaintiff sued Brigham in Chancery and thus compelled an accounting and obtained a decree against him. The judge at the Circuit held, that the decree was conclusive as to the defendant, although he was not a party to it. This was held error, but Judge COWEN, writing the opinion, says : "Had Brigham voluntarily accounted, on the principle prescribed by his covenant, the surety would have been liable for the balance struck. The striking of such a balance would be an admission making part of the *res gestœ.* Indeed, that and every act leading to or connected with it, would be the *res gestœ* themselves, for which the defendant undertook in his covenant." In this case, the admissions of

Badger were no part of any *res gestœ* in reference to which Elkins undertook in his agreement. All he undertook to do was to pay the loss. He did not undertake that Badger should adjust the loss and to pay the balance found due.

More nearly in point, but against the plaintiffs, are the following authorities: *Hotchkiss* v. *Lyon* (2 Blackf., 222); *Shelly* v. *Governor* (2 id., 289); *Beal* v. *Beck* (3 Har. & McHen., 242); *Bacon* v. *Chesney* (1 Stark., 192). These cases all hold that the declarations of the principal bind the surety only when they are part of the *res gestœ* in reference to which the surety has covenanted, but that his subsequent admissions, not part of the *res gestœ*, do not bind and are not competent evidence against the surety. In a *nisi prius* case (*Cutler* v. *Newlin*, cited in 3 Starkie's Ev. 1387), a most eminent judge (HOLROYD) refused the admission of the principal against his surety in an indemnity bond going to show the amount of damage. Here the statements of Badger were made, not when he was engaged in any transactions as to buying or selling stocks, but after all the transactions were closed. They were admissions as to the balance due the plaintiffs upon the short account, and were claimed to furnish and were received as furnishing competent evidence of that balance against the defendant.

For this error the judgment should be reversed and new trial granted, costs to abide event.

All concur, except DWIGHT, C., not voting.

Judgment reversed.