(9 Misc. Rep. 465.)

SINGER MANUF'G CO. v. COON.

(Common Pleas of New York City and County, General Term. August 1, 1894.)

EVIDENCE—RES GESTAE.

    Where, in an action against a surety on a bond conditioned on the faithful conduct of the principal as collector, it appears that the principal was supplied with printed receipts, regularly numbered, and that it was his

duty to note on the stubs corresponding to the number of the receipts the person to whom the receipt was given, and the amount thereof, which stubs were turned in to the cashier each day, the stubs and receipts, being part of the res gestae, are admissible in evidence as admissions by the principal of money received.

Appeal from sixth district court.

Action by the Singer Manufacturing Company against Abraham Coon, as administrator of George Coon, deceased, on a bond. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before BOOKSTAVER and BISCHOFF, JJ.

Moses Esberg, for appellant.

William H. Hamilton, for respondent.

BOOKSTAVER, J. This action was brought against one George Coon upon a bond which he had executed as surety for one Frederick Joseph, an employé of the plaintiff, for moneys collected by him while in the employ of the company from the lessees of its machines, and not accounted for or turned over. The surety alone is sued in the action, and his liability under the bond is limited to the sum of $200 and 10 per cent. attorney's fees, making in all $220. In order to a clear understanding of the questions of law involved in this case, it is necessary to give a somewhat extended statement of the way in which the plaintiff's business was conducted. From the evidence it appears that any one entering into the employ of the company as a collecting salesman or canvassing collector was required to furnish a bond conditioned for the faithful performance of his duties as such employé, and to account for, pay over, and deliver to the company all moneys, credits, notes, leases, etc., that might be intrusted to him or come into his possession or under his control by virtue of his employment. The company manufactures and sells, on the installment plan and otherwise, sewing machines owned by it; and it was for the canvassing of new leases of its machines, and for the collection of installments on open accounts, that Joseph was employed as agent. He was given a set of one-dollar, three-dollar, and five-dollar receipt books, and a card prepared somewhat on the plan of a ledger page for each account in his district. When he collected an installment from a lease he was required to issue a receipt for the same, which he signed, and also to enter on the stub corresponding to the receipt the name, date, and amount, etc., as well as on the receipt, which he also signed. Each receipt had a number which corresponded to that of the stub. At the same time he was bound to credit the party making the payment on the card appertaining to that particular lease account. This card enabled all parties at a glance to ascertain the condition of the account at any particular time. Every evening, on the completion of his day's canvassing, he was required to return to the cashier of the company his receipt books, and the payments indicated by the stubs, and from those stubs entries were made in the company's cash book, and subsequently posted in the ledger. On the following morning the receipt books were returned

to him for further collections on that day. When all the receipts in the book were used up, it was turned in to the company, and filed away. When all installments due on any particular machine were paid, Joseph turned in the card for that amount, and the company gathered together all the receipts in the hands of the lessee which were not lost or destroyed, and issued a bill of sale of the machine, and the account was then closed. At times payments were made by lessees to the company at its office, instead of directly to the collecting agent, and then it was developed that the lessee in some cases held more receipts than he was credited for on the books of the company. This led to inquiry, whereupon all the accounts in Joseph's district were investigated, and by comparing the receipts held with the accounts of the lessees as shown by the company's books an estimate of the deficiency was arrived at. The receipts in excess were taken up, and others issued to the holders, and the lessees credited with the payments thus authenticated on its books, even although, as is apparent, the company never received payment on such receipts. The result of this was that the company held in its hands certain receipts bearing the name of a given lessee, and a stub corresponding to the same in number bearing the name of another and different lessee, both of which, from the necessity of the case, were credited on the books of the company, although one payment only in each case was actually turned in by the agent; the other being retained by him. The various books containing stubs only, corresponding in numbers to the receipts mentioned, but unlike in all other particulars, showed that from the beginning of 1892 down to the commencement of this action Joseph had made collections from the lessees mentioned by him in those stubs, and persons and accounts entirely different from those whose names, amounts, etc., are mentioned in the bill of particulars. These stubs were turned in daily to the company's cashier, along with the amount of cash represented by them. At the same time a collector's card for each amount on which Joseph had made these collections that day, and which collections were noted thereon by him, was turned in. From these stubs and cards, all in Joseph's handwriting, and constituting his report for the day, the cashier and bookkeeper made the corresponding credit entries to the different accounts on the company's books. Of course the amount of cash turned in each day corresponded to the collector's report of his collection as such report appeared on the receipt stubs and on the collector's cards. For that reason Joseph's embezzlement was not discovered until lessees holding receipts for payments sufficient to entitle them to a bill of sale of the machine appeared at the company's office to obtain it, at the same time presenting a receipt or receipts signed by Joseph, but never reported by him, and bearing numbers corresponding to the number of stubs on which Joseph had reported other collections. An examination of all of the receipts thus collected by the company showed that Joseph had failed to account for upwards of $480 which he had received from various lessees mentioned in the bill of particulars annexed to the complaint. Joseph was called as a witness for de-

fendant, and practically admitted that he had purposely made false reports to the company as to the account on which he made collections, and excusing himself because "in the beginning it was less than a dollar. Trying to rectify it, I got deeper and deeper all the time. Every night or the following day I tried to cover it." He also claimed that these entries were made in the manner they were "to keep dead cases alive," but on cross-examination he was unable to testify as to which were dead or which were live cases. It is true that in a general way he claimed that he had never misappropriated the company's money, but in one particular instance, amounting to $30, he confessed that he had collected, but never turned in, the amount. In some cases where the stubs did not correspond to the receipt, he admitted that he had received the money as mentioned on the stub; and in other cases it appeared that persons whose names were mentioned only on the stub testified that they got from the company bills of sale of machines although they were short of receipts.

With the exception of the $30 before mentioned, and one or two items of less amount, the plaintiff, on the trial, relied upon the stubs, receipts, and cards made by Joseph in the course of his employment, as proof of his embezzlement; and the first question presented is whether these receipts, stubs, etc., were evidence against the surety. As a general rule, a surety is not bound by the admissions of his principal, and the reason for this is obvious. The surety is bound only for the actual conduct of the principal, and not by what he may have said or done outside of his employment. But to this rule there is one well-defined and long-established exception, and that is in the case of declarations or admissions made by the principal during the transaction of his business and in the course of his employment, so as to become a part of the res gestae, under which circumstances such acts and admissions have always been held admissible against the surety, and binding upon him. The general proposition is thus laid down in Greenleaf on Evidence, § 187:

"In one becoming surety upon a bond conditioned for the faithful conduct of another as clerk or collector, it is held that in an action on the bond against the surety, confessions of embezzlement, made by the principal after his dismissal, are not admissible in evidence, though with regard to entries made in the course of his duties it is otherwise."

To the same effect, Phil. Ev. (Ed. 1868) p. 436.

In conformity with this exception it has been uniformly held that the statements of a treasurer of a society, made during the period covered by his bond, and in accordance with his duty, were competent and primary against his sureties. McKim v. Blake, 139 Mass. 593, 2 N. E. 157; Bank v. Smith, 11 Allen, 243; Father Mathew Soc. v. Fitzwilliams, 84 Mo. 406; State v. Newton, 33 Ark. 276. So, too, the return of a sheriff on execution has been held to be conclusive evidence of the moneys received by him against his sureties (Crock. Sher. § 46, Cow. & Hill's notes, 1085; Bagot v. State, 33 Ind. 262; Price v. Cloud, 6 Ala. 248); and his indorsement on the execution of the time of its receipt is deemed conclu-

sive evidence that it was in his hands at that time (Williams v. Lowndes, 1 Hall, 579). It is true, in such cases it has been held that, as to third parties, it is prima facie evidence only, and may be explained. Baker v. D'Duffie, 23 Wend. 289. In this instance the defendant attempted to explain the transaction, but the justice who tried the case (and, we think, properly) placed no reliance upon the explanation. So, also, it has been held that the voluntary account of an administrator was prima facie evidence of the amount in his hands on a suit against his sureties. Lane v. State, 27 Ind. 108. The distinction between the rule before laid down and the exception was very correctly stated in Douglass v. Howland, 24 Wend. 35, where the declarations of the principal sought to be admitted in evidence as against the surety on the trial of that action consisted of a decree in chancery upon a proceeding for compulsory account of the principal as to funds in his hands, the surety not being a party to the proceeding, which said accounting and proceedings were had some time after the payment sought to be recovered against the surety. On the trial below the decree was admitted in evidence, and upon review before the appellate court it was held error, on the ground that such a decree did not constitute a part of the res gestae, or of the transaction for which the surety was bound. The bond in that case was conditioned for an accounting on the part of the principal for certain moneys and for the payment over by him of the balance due to the plaintiff. Judge Cowen, writing the opinion of the appellate court, laid down the distinction in the following language:

"That, had the principal voluntarily accounted on the principle prescribed by his agreement so to do, the surety would have been liable for the balance struck. The striking of such a balance would be an admission making part of the res gestae. Indeed, any and every act leading to or connected with it, would be the res gestae themselves, for which the defendant undertook in his covenant."

But the accounting in that case was compulsory, and made long after the employment had ceased, and was clearly not admissible as part of the res gestae; and the appellate court so held. In Hatch v. Elkin, 65 N. Y. 489, which cited and approved Douglass v. Howland, supra, where a letter written by the principal long after the account was rendered and closed, admitting the correctness of a certain account, and the balance therein stated to be due, it was held on appeal to be inadmissible as against the surety. The court said that:

"Such admissions of the principal were no part of any res gestae, in reference to which the surety undertook in his agreement. * * * Here the statements of the principal were made, not when he was engaged in any transactions as to buying or selling stocks, but after the transactions were all closed."

We think the case of Machine Co. v. Farrington, 16 Hun, 591, affirmed 82 N. Y. 121, directly in point in this case. There the action was upon a bond executed by one Davis and the defendant as surety. The agent, Davis, was in the employ of the plaintiff company for sale of its machines, and the bond was condi-

tioned for the faithful performance of the duties of the agent, and that he would make report of sales and remit proceeds weekly, and return to the company, on demand, all machines, etc., not sold. There it was said:

"It is contended that the declarations of Davis were not evidence that he received the machines, as against the defendant. The proof was expressly limited to declarations made by him during the period of the consignments and after the execution of the bond in suit, and consisted of admissions made by him of the correctness of plaintiff's books upon their being exhibited to him. The declarations were, therefore, a part of the res gestae, and were admissible. It would have been otherwise if they had been made after the transactions were closed, for which the surety was bound;" citing 1 Greenl. Ev. § 187; Hatch v. Elkin, 65 N. Y. 489; Bank v. Darragh, 1 Hun, 111; Horn v. Perry, 14 Hun, 409.

In Placer Co. v. Dickerson, 45 Cal. 12, the receipts given by a county treasurer for payment of taxes made to him were held to be primary evidence against his sureties of the receipt of such moneys. It has also been held, in an action against the sureties of a justice of the peace for moneys collected by him and not paid over, that letters written while in office to the execution creditor, acknowledging the receipt of the money, etc., were competent evidence against and binding upon his sureties. Parker v. State, 8 Blackf. 292. In the case under consideration, the stubs, receipts, and cards were signed and issued by Joseph as agent for the plaintiff at the time of the various transactions, and were contemporaneous with the payments made to him by the lessees. The stubs were filled out by him at the same time, and were turned in to the company on the same day, his report of collections, etc., were. They were, in fact, not only part of the res gestae, but they constituted the res gestae themselves, and as such were, in our judgment, admissible in evidence against the surety, and binding upon him. This being the case, the proof is ample to support the judgment rendered by the justice. The stubs acknowledge the receipt of a certain sum of money from one person. The receipts corresponding in number to the stubs acknowledge the receipt of a similar sum from another. This is corroborated by the entries made upon the cards, all in Joseph's own handwriting; thus clearly showing that he accounted for but one sum received where he had in fact received two of like amount. The broad claim made by Joseph that he had turned in all the money received by him, and in fact had accounted for all the moneys collected by him, was discredited by the admitted fact that he had collected $30, and one or two other smaller sums, without accounting for them; and the justice very properly disregarded the claim. The bond being given for a faithful accounting, and the proof of unfaithfulness being clear, we think the judgment should be affirmed, with costs.