State ex rel. v. Elliott.

THE STATE OF MISSOURI ex rel., F. J. TYGARD, Curator, etc., Plaintiff and Defendant in Error, v. JOHN M. ELLIOTT et al., Plaintiffs and Defendants in Error.

Kansas City Court of Appeals, January 8, 1900.

1. **Appellate and Trial Practice: REFEREE'S REPORT: MOTION FOR A NEW TRIAL.** To review the action of a trial court in passing ·on exceptions to the report of a referee, a motion for a new trial is necessary; and the appellate court will not review any action of the trial court which is not mentioned in such motion.

2. **Guardian and Curator: ALLOWANCE FOR INTEREST ON BORROWED MONEY: ANNUAL SETTLEMENTS: IMPEACHING TESTIMONY.** Where a ward's estate is subject to fixed charges and there are no funds in hand to pay the same when they become due and the curator borrows money to discharge them and receives credit for interest on such borrowed money in his annual settlements, such settlements are *prima facie* correct and will be so held in the absence of impeaching testimony.

3. ———: ———: **WARD'S ESTATE IN TWO STATES.** Where a ward has an estate in both Missouri and Kentucky and it is necessary to protect his estate that money be borrowed, the fact that the curator transfers the proceeds of the Missouri estate to meet the necessities of the Kentucky estate will not defeat his right to credit for interest on money borrowed to protect the former estate.

4. ———: **ILLEGAL TAX: PENALTIES: CREDIT FOR.** Where a curator pays an illegal tax and penalties accrued thereon and receives credit therefor in his settlement, in the absence of impeaching testimony he is entitled to such credit on final settlement, especially where the estate is shown to be without money in hand at all times to pay its fixed charges.

5. ———: **ATTORNEY'S FEE: FAILURE TO DISCHARGE DUTY.** Where a curator has discharged all his duties he is entitled to a reasonable attorney's fee in defending his settlements; but if he has not so discharged his duties, he is not entitled to such allowance.

State ex rel. v. Elliott.  ·

6. ———: TRANSFER OF FUNDS: COMMISSIONS. Though a transfer of funds of the ward from one state to another may not be in strict conformity with the law and under direction of the probate court, yet, where the money is actually applied to preserve the ward's estate and is reported to the probate court and allowed in the annual settlement, an allowance of five per cent commissions can not be held to be illegal.

7. ———: TRAVELLING EXPENSES OF APPOINTMENT: PAYMENT TO AGENT. A curator residing in another state is not entitled to a credit for his expenses in coming to this state to qualify, but a payment which is allowed in his first settlement for services of an agent is *prima facie* correct and will be allowed in the absence of impeaching testimony.

8. ———: PAYMENTS TO STEWARD. A nonresident curator may be entitled to the services of a steward in the management of a large farm belonging to his ward in this state, and the rule to determine the compensation of such steward is not necessarily fixed by the fact that others near the estate would have done the work for a less sum with less expense, especially where such steward has increased the productive capacity of the farm and secured handsome returns.

9. Appellate and Trial Practice: FINDING OF REFEREE: SPECIAL VERDICT: EVIDENCE. The finding of a referee is a special verdict and a reviewing court will not disturb the result if there be any substantial evidence to support it.

10. Guardian and Curator: UNPLEADED ITEM. In an action on a curator's bond he will not be allowed a credit which is not pleaded in his answer and is without any evidence to support it.

11. ———: ROAD TAX: PAYMENT TO WRONG OFFICER. The fact that a guardian paid a road tax to a wrong officer will not of itself defeat his right to a credit therefor.

12. ———: COMMISSION ON PAYMENT TO WIDOW. A guardian and curator is not entitled to commissions on an amount paid the widow of the ward's father for her part of the rent of land subject to her dower.

13. **Trial Practice: REFEREE'S REPORT: RULINGS OF EVIDENCE.** The failure of a referee in his report to make rulings on the introduction of evidence will not warrant the setting aside of such report where such failure does not operate to the prejudice of the accepting party.

14. **Guardian and Curator: ACTION ON BOND.** On the record in this case it is held that relator's action was properly sustained and a modified judgment is entered.

Error to the Cass Circuit Court.—*Hon. W. W. Wood*, Judge.

JUDGMENT MODIFIED.

*Thos. J. Smith* for plaintiff.

(1)   This action is maintainable without final settlement having been made.   State ex rel. v. Roeper, 9 Mo. App. 21; State ex rel. v. Miller, 44 Mo. App. 122; Clarke v. Sinks, 144 Mo. 448.   (2)   The annual settlements of defendant, Elliott, with the probate court have not the effect of judgments; and all errors found therein may be corrected at the final settlement, or in an action on the bond where no final settlement has been made.   Picot v. Biddle's Adm'r, 35 Mo. 29; In re Davis, 62 Mo. 453; In re Barnes, 43 Mo. App. 296; State ex rel. v. Miller, *supra*; McPike v. McPike, 111 Mo. 225; Clark v. Bettelheim, 144 Mo. 258-273.   (3)   The matters of defense pleaded by the defendants being affirmative, the burden of proof to establish the same was upon the defendants. (4)   The degree of care, diligence and prudence required of Mr. Elliott as curator, in the discharge of all his duties as such, was that which a careful and prudent man exercises in the management of his own affairs.   State ex rel. v. Meagher, 44 Mo. 361; Julian v. Abbott, 73 Mo. 580; Jacobs v. Jacobs, 99 Mo. 435; Powell v. Hurt, 108 Mo. 513; Scudder v. Ames, 142 Mo. 231-232; Spaulding v. Wakefield's Est., 53 Vt. 660. (5)   This care required that he give his personal attention to the duties of his trust.   1 Perry on Trusts, sec. 266, 402;

2 Perry on Trusts, sec. 603; McCloskey v. Gleason, 56 Vt. 264; s. c., 48 Am. Rep. 770. The same principle is recognized in our constitution, art 2, sec. 18. (6) Even if the evidence of Mr. Elliott as to the direction of Mrs. Hamilton to employ Mr. Ficklin as his agent had been competent, this would have been no justification of his doing so at an unnecessary increase of cost to his ward's estate. He was required, at his peril, to act in all matters judiciously. Folger v. Heidel, 60 Mo. 284; Scudder v. Ames, 89 Mo. 509; Spaulding v. Wakefield's Estate, 53 Vt. 660; s. c. 38 Am. Rep. 709. (7) The approval of the annual settlements in which money was accounted for by defendant, Elliott, as transferred to Kentucky was not a final judgment from which an appeal could have been taken. Baker v. Runkle, 41 Mo. 391; State ex rel. v. Miller, 44 Mo. App. 122; In re Barnes, 43 Mo. App. 295. (8) The order transferring or refusing to transfer said funds under the statute is a judgment from which an appeal will lie. R. S. 1889, sec. 5317; In re Wilson, 95 Mo. 184. (9) Even if the probate court had made its order approving these several transfers after they had been made, that would not have been equal to, or taken the place of, the proceedings required by statute to authorize the transfer. Lake v. Meier, 42 Mo. 389; Mueller v. Kaessmann, 84 Mo. 318. (10) Defendants are not entitled to any credit on account of the payment of the costs, commissions, penalties and interest that accrued upon the taxes allowed to become delinquent while in the charge of the defendant, Elliott, it being his duty to keep these paid promptly. Williams v. Petticrew, 62 Mo. 460; Jacobs v. Jacobs, 99 Mo. 437. (11) After the decision of the case of State ex rel. v. Railway, 123 Mo. 72, certainly there was neither justification nor excuse for the payment of the taxes for county purposes in excess of the constitutional levy. Scudder v. Ames, 89 Mo. 512. (12) The recovery must be confined to the issues made by the pleadings. 2 Thompson on Trials, 2309; Currier v. Lowe, 32

Mo. 203; Waddingham v. Hulett, 92 Mo. 528; Wright v. Fonda, 44 Mo. App. 634; Aultman & Taylor Co. v. Smith, 52 Mo. App. 351.   (13)   The defendant is not entitled to credit for commission on the amount of money paid by himself to Mrs. Emma Hamilton as her absolute property, as against these wards.   R. S. 1889, sec. 5334; Hawkins v. Cunningham, 67 Mo. 415-418; Jacobs v. Jacobs, 99 Mo. 437; In re Estate of Boothe, 38 Mo. App. 456; Scudder v. Ames, 89 Mo. 512; Tracy v. Railway, 13 Mo. App. 295; s. c., 84 Mo. 210; 27 Am. and Eng. Ency. of Law, pp. 190, 191.   (14) It was the duty of defendant Elliott to keep an accurate account of all his transactions as curator, the penalty for failing in which, being, that compensation may be disallowed. 2 Perry on Trusts, sec. 911; State ex rel. v. Berning, 74 Mo. 87-100.   (15)   Refusal to make settlement to the probate court under the circumstances in this case being willfull would justify refusal of any compensation to the trustee.   27 Am. and Eng. Ency. of Law, p. 187, note 3.

*Chas. W. Sloan* and *R. T. Railey* for defendants.

(1)   Settlements of administrators and curators are on the same footing in this state; and before plaintiff could set aside allowances and credits allowed by the probate court of Bates county it should have been charged in petition that they were fraudulently secured to be allowed, or the facts pleaded specifically, which was not done.   State ex rel. v. Roland, 23 Mo. 95; Jones v. Brinker, 20 Mo. 87; Sheetz v. Kirtley, 62 Mo. 417; Cooper v. Duncan, 58 Mo. App. 5-10; Miller v. Major, 67 Mo. 247; Patterson v. Booth, 103 Mo. 418; Houts v. Shepherd, 79 Mo. 141; Hancock v. Blackwell, 41 S. W. Rep. 205; State ex rel. v. Strickland, Adm'r, 80 Mo. App. 401.   (2)   The settlements made in said probate court were *prima facie* correct, and the burden devolved on the plaintiff to show to the contrary, even if the petition

justified in this collateral proceeding an inquiry as to the correctness of credits allowed therein. Myers v. Myers, 98 Mo. 262-270; R. S. 1889, sec. 5319; Clarke v. Sinks, 144 Mo. 448; Ladd v. Stephens, 147 Mo. 319. (3) Probate courts have exclusive jurisdiction over curators and guardians, and exclusive jurisdiction to pass upon their demands; have the discretionary power in regard to claims which are presented for services and for other things which are done for the benefit of the estate; and when said court has passed upon the same, in a collateral proceeding like this, the referee has no power to overrule the judgment of the probate court in respect to these matters. Const. Mo., sec. 34, art. 6; Rogers v. Johnson, 125 Mo. 213; Noland v. Barrett, 122 Mo. 188, 189; Leonard v. Sparks, 117 Mo. 108; Macey v. Stark, 116 Mo. 494; Williams v. Mitchell, 112 Mo. 308, 309. Brawford v. Wolfe, 103 Mo. 395; Price v. S. R. Est. Ass'n, 101 Mo. 118; Rottman v. Schmucker, 94 Mo. 143; Camden v. Plain, 91 Mo. 129; Bryan v. Mundy, 14 Mo. 459; Henry v. McKerlie, 78 Mo. 416; Brooks v. Duckworth, 59 Mo. 51; Johnson v. Beazley, 65 Mo. 250. And when assailed collaterally all presumptions will be indulged in favor of the findings of the court, that it did its duty in hearing evidence, etc. (4) Especially is this true, for the law presumes that every officer, as well as individual, performed his duty. Lenox v. Harrison, 88 Mo. 491; Yarnell v. Railway, 113 Mo. 579; State ex rel. v. Bank, 120 Mo. 169; Mathias v. O'Neill, 94 Mo. 528; 1 Phil. Ev. (C. & H.'s notes), p. 604, sec. 10; State ex rel. v. Williams, 99 Mo. 302 and cases cited; Henry v. Dulle, 74 Mo. 451, 452; Bush v. White, 85 Mo. 356; Long v. J. M. & S. Co., 68 Mo. 431; Hammond v. Gordon, 93 Mo. 226. *Omnia praesumntur rite et solemniter esse acta.* (5) The probate court had express authority to allow for all expenses "for the preservation of the estate," R. S. 1889, sec. 5319; also to allow such compensation as the court deemed reasonable and just. R. S. 1889, sec. 5334. This judicial discretion was

of a kind not reviewable. Carr v. Dawes, 46 Mo. App. 598.
(6) The circuit court committed no error in allowing credit
to curator for interest paid on money borrowed from banks,
and did not err in overruling referee on this point. The un-
contradicted evidence was that $343.78 were paid in interest
and that Ficklin, as agent, borrowed no money when he had
funds on hand. (7) The circuit court committed no error
in refusing to charge curator with $51.33, for road taxes.
(8) The acts of Elliott as curator, in good faith, in the exer-
cise of his discretion will be upheld and sustained; only
ordinary care and prudence were required. Mosman v.
Bender, 80 Mo. 579-584; Gamble v. Gibson, 59 Mo. 596;
Julian v. Abbott, 73 Mo. 580; State ex rel. v. Slevin, 93 Mo.
253. (9) Elliott, having acted in good faith in all of his
transactions, which fact was found by the referee and ap-
proved by the circuit court, was entitled to his commission.
Schoeneich v. Reed, 8 Mo. App. 356; Finley v. Schlueter, 54
Mo. App. 458; Julian v. Abbott, 73 Mo. 580. A rate of com-
mission had been established by the probate court of Bates
county, which was followed properly by the referee. (10)
The referee's report as to finding of facts will not be disturbed
if there is any evidence to support the same. Berthold v.
O'Hara, 121 Mo. 88; Goetz v. Piel, 26 Mo. App. 634; Drug
Co. v. Saunders, 70 Mo. App. 221. Where a finding of
facts is made the appellate court may apply the law and affirm
report as modified. Clark v. Phillips, 99 Mo. 550. (11)
The court erred in sustaining plaintiff's exception as to com-
mission on $3,787.44 transferred to Kentucky, and in refus-
ing to allow curator's commission of five per cent thereon, to
wit, $189.37. Clark v. Anderson, 10 Bush. (Ky.) 99; Layton
v. Davidson, 29 Hun. 622; Matter of Jackson, 32 Hun. 200;
Matter of Mason, 98 N. Y. 527; Matter of Crawford, 113
N. Y. 560. (12) The uncontradicted evidence showed that,
a fee of $500 would be reasonable for defending this action,
and that a fee of $200 would be reasonable for attorneys' fees

for defending this action in the appellate court. The court erred therefore in refusing to sustain the allowance of $500 attorneys' fees by the referee; and also erred in refusing to allow a fee of $200 for defending this action in this court. Jacobs v. Jacobs, 99 Mo. 427; Scudder v. Ames, 142 Mo. 243; In re Est. of Meeker, 45 Mo. App. 186-197; Woerner on Guardians, p. 350, sec. 105. (13) The court erred in refusing credit for taxes paid above constitutional limit to the amount of $39.33, under the decision in 123 Mo. 72; especially for the reason that the evidence of Ficklin, who paid said taxes, showed he had no knowledge whatever of such taxes being illegal, and paid the same in good faith. Christy's Adm'r v. City of St. Louis, 20 Mo. 143; Scudder v. Ames, 142 Mo. 231, 232.

SMITH, P. J.—George Hamilton, a resident of the state of Kentucky, was the owner of about 1,500 acres of land in Bates county, this state. Archie L. Hamilton, a son of the said George Hamilton, likewise a resident of Kentucky, was also the owner of 340 acres in Bates county, adjoining that of his father. The said George and Archie L. Hamilton executed a deed of trust on certain described parts of said lands, so owned by them, to Jarvis & Conklin to secure a loan of $13,000.

Afterwards, in 1887, the said George Hamilton, by deed, conveyed said 1,500 acres of land to his son Archie L. in trust for the two minor children of the latter, namely: Amelia May and Archie L., Jr. In 1889, Archie L. Hamilton, Sr., died, after having first made his will by which he appointed the defendant, John M. Elliott, also a resident of the state of Kentucky, executor thereof; he also appointed said Elliott trustee of his personal estate. In 1890, the defendant Elliott came to this state and caused himself to be appointed by the probate court of Bates county, curator of the estate of the

said two minors and gave a bond as such curator in the sum of $7,500 with the other defendant, Ashby Hamilton, as surety thereon.     Elliott, in his quality as curator, took charge of the real estate, hereinbefore referred to, and received the annual rents thereof from 1890 to 1895.     In 1891 and for the three succeeding years he regularly made his annual settlements of the estate of his said wards with said probate court.     In 1896, he was removed by the order of the said probate court and, in his stead, the relator, Tygard, was appointed curator of the estate of said wards.

The relator brought this action against his predecessor on his said bond and in his petition he alleged, as a breach of the conditions thereof, that the latter, during the administration of his said trust, had received rents and profits from the said real estate amounting to $20,000, and had paid out no more than twelve thousand dollars; and that therefore there was a balance of $8,000 remaining in his hands, unaccounted for.     The answer of Elliott admitted that he had received into his hands funds of his said wards amounting to $20,000, but alleged that he had paid out for them, and for their use and benefit, all the funds that had come into his hands.     The answer further specially pleaded said three annual settlements, and claimed that the same were conclusive on the relator.     It was therein further pleaded that in the administration of his said trust, he had transferred, in the aggregate, from himself as curator in this state to himself as trustee in Kentucky, the sum of $3,787.44, which sum he had paid out to the use and benefit of his wards, and for the preservation of their estate in Kentucky; and that he had made settlement of his accounts, as trustee, with certain designated courts of the latter state having jurisdiction of the subject-matter of said settlement, in which he had accounted for the entire amount of the fund transferred as aforesaid; and that the action of said courts was final and conclusive on the relator. It was further therein pleaded, that about one-half of the

fund so transferred, as aforesaid, had been reported by him to the probate court of Bates county in his several annual settlements therewith.

. It was further therein alleged, that that part of the funds coming into his hands as curator of said wards and not embraced in said settlements so made by him with said Bates county probate court, was paid for and in behalf and to the use of said wards to divers persons, as shown by an itemized account marked "E," and made a part thereof, amounting to $8,285.51; that the payments so shown by the said exhibit were just, reasonable and necessary for the preservation and protection of the estate of said wards in the states of Missouri and Kentucky. It was therein further alleged, that by the terms of the will of said Archie L. Hamilton, deceased, he devised the real estate hereinbefore mentioned to his two children—the said wards; that by the terms of said will, it was provided that all the debts of the said testator should be paid out of his estate; that there were certain debts incurred by the testator in his lifetime, which were a charge on his estate in Kentucky; that it became necessary to pay off and discharge the said indebtedness for the benefit of said wards' interest in said Kentucky real estate, and to that end, he, as curator of said wards in this state, did transfer to himself, as trustee of said wards in Kentucky, certain funds with which he paid off the said indebtedness, and thereby prevented a sale and sacrifice of said Kentucky lands; and that he accounted, and obtained credit therefor with the said probate court of Bates county, in his said settlements made with it, etc.

The reply admitted that the defendant Elliott had made the several annual settlements specially pleaded in his answer, but denied generally the other allegations therein contained. It further proceeds at great length to allege wherein certain items in the said annual settlements, and in said exhibit "E,"

were illegal and improper charges against the estate of said wards.

The case went to a referee, who heard the evidence and made a report of his findings of fact and conclusions of law. Exceptions were filed to the report by both parties, some of which were sustained and some overruled. The court modified the report of the referee so that the finding and judgment was for relator in the sum of $476.57. Motions for a new trial were filed by both relator and defendant, which were severally overruled. The relator and the defendant have each sued out a writ of error, by which the cause is brought here.

I. The referee found that the defendant, in his quality as curator, had transferred from the funds of his wards in his hands in this state to himself as trustee of the estate of said wards in Kentucky, $3,787.44, but declined to allow him a credit therefor, for the reason that such transfer was made without first procuring an order of the probate court of Bates county for that purpose. The defendant's fourth exception, which challenged the correctness of this finding of the referee, was sustained, and a credit for the amount of the said transfer was allowed by the court to defendant. But the relator, in his motion for a new trial, does not make the action of the court in this respect one of the grounds therefor. In Home Savings Bank v. Traube, 6 Mo. App. loc. cit. 229, it is said: "The chief object of the motion for a new trial is that the attention of the trial court being expressly called to all exceptions taken to its action, an opportunity may be afforded for more careful examination and more mature deliberation, that errors may be corrected and new trials awarded, in many cases, without the delay and expense attendant upon an appeal. The State v. Marshall, 36 Mo. 400. Whether such a motion is necessary in case of a new trial by a referee, where the case has been referred to him to try all the issues, and where exceptions to his report have been passed upon by the

court is a question which it might be interesting to discuss, did we consider the matter *res integra* in this state. The practice has been to file such a motion." State ex rel. v. Burckhartt, 83 Mo. 430; Long v. Towl, 41 Mo. 398; Collins v. Saunders, 46 Mo. 389; Rotchford v. Creamer, 65 Mo. 48. If the relator deemed the action of the court, in sustaining the defendant's fourth exception to the report of the referee, erroneous he should not only have made such action the basis of an exception, but should have also called the attention of the court thereto, in his motion for a new trial. The record does not show that this was done; and therefore the action of the court in allowing to the defendant as a credit the said amount of $3,787.44 is not subject to review by us.

II.   The referee declined to allow the defendant credit for interest paid by him to the Adrian bank. To this action of the referee the defendant excepted. The court sustained the exception and allowed the defendant on that account, $319.28. The relator assigns this action of the court as error. The lands of the defendant's wards in this state were subject to an incumbrance of $13,000, as has already been stated. The interest was payable annually in July. The curator had no fund out of which to pay the same, except that derived from the rent of said lands. There was therefore not always money on hand with which to meet this annually accruing interest. To prevent a sale of the land, on account of default in the payment of the interest, the defendant conceived it to be his duty, and for the best interest of his wards, to borrow the needed money with which to pay such interest. This he did. He reported the same to the probate court and was allowed a credit therefor by that court in his annual settlements.

These annual settlements were not conclusive, but were *prima facie* evidence of the correctness of the account therein stated. This is now the established law in this state. Myers v. Meyers, 98 Mo. 262; State v. Strickland, 80 Mo. App. 401. The defendant's annual settlements showing that the probate

court had allowed his a credit therein for such interest was *prima facie* evidence that it was correct, and unless the relator showed that the same was improper the defendant was entitled to a finding* in his favor as to that item. No evidence is disclosed by the record, impeaching its correctness on any ground.

It is contended by the relator that if the defendant had not transferred said $3,787.44 to Kentucky that there would have been money in his hands with which to meet the interest on the said $13,000 note, and therefore no occasion for borrowing money for that purpose. We may assume that the money was authoritatively transferred to Kentucky, and since it appears from the evidence that funds were needed in that state to prevent the sacrifice of the interests of the defendant's wards there, and since, too, it would seem that the fund on hand was not sufficient to protect the interests of his wards in both states, and that it was necessary to obtain a loan either in the one state or the other, it made little or no difference, so far as the interests of his wards were concerned, whether he borrowed in the one state or the other. He elected to procure the loan in this state, and we are not persuaded by the evidence that this operated to the injury of the estate of his wards, or that it was imprudent on his part to do so. It is not disputed that the interest was actually paid on the money borrowed to pay the annually accruing interest on the Missouri mortgage on the lands of the wards. The wards received the full benefit of the transaction. We are not of the opinion that the trial court erred in sustaining defendant's exception and allowing him credit for said item of interest.

III. It appears that the supreme court of this state in 123 Mo. 72, held that a certain tax that had been levied in Bates county was in excess of the rate allowed by the constitution. It further appears that the defendant, in ignorance of that decision, but in good faith, paid the tax and certain

penalties that had accrued thereon. In his settlement with the probate court he was allowed a credit for both tax and penalty. There is no evidence in the record rebutting the *prima facie* correctness of this item. It is not shown that defendant did not act with that degree of care which cautious persons exercise in their own business. This was the measure of the defendant's duty. Jacobs v. Jacobs, 99 Mo. 427; Merritt v. Merritt, 62 Mo. 150; Scudder v. Ames, 142 Mo. 231. No reason is seen why the defendant was not entitled to a credit for the tax. He had a right to presume that the officers had performed their duties in extending the taxes on the tax book. He is not presumed to have known that the rate was in excess of that allowed by the constitution. It may be assumed that a very small per cent of the taxpayers of any community, in paying their taxes, stop to examine the rate of taxation levied against their property, or, if they do, are able to determine whether it is constitutional or not, or whether the tax they are called upon to pay was levied within the constitutional limit. It is not believed that any but those who are exceptionally cautious—above the average—make, or are capable of making such an investigation. A man may be a prudent and cautious man, and yet not take the precaution to make such an inquiry before paying his taxes. Unless the defendant was shown, as he was not, to have had actual knowledge that part of the taxes paid by him were illegal, we think the finding of the referee allowing him credit therefor ought to stand.

In the face of the evidence showing that the estate did not at all times have money on hand with which to pay the fixed charges against same, we can not say that the referee was wrong in allowing defendant a credit for the penalties which were charged on delinquent taxes paid by him. It is conceded that this item was allowed defendant as a credit in his annual settlement. This must be taken as *prima facie* evidence of its correctness. There is no rebutting evidence

in the record tending to show that it was incorrect. The relator's fourth exception relating to the allowing of said illegal tax, amounting to $39.33, was improperly sustained. The defendant was entitled to a credit for this, as well as for $48.73, the amount of the penalty disallowed by the referee. The court therefore instead of allowing the penalty alone, should have allowed both tax and penalty paid by defendant.

IV. The referee allowed the defendant $500 as a fee for his attorneys in defending this action. It is inconceivable upon what theory this was done. According to the report of the referee, the defendant was in arrears to the estate of his wards in the sum of $3,851.91. If the defendant had discharged all his duties as curator of said wards and, in the main, had rendered a true account of his trust in his several settlements, he would, no doubt, have been entitled to the reasonable attorneys' fee required to be paid out by him in defending such settlements. But where it appears, as here, that he has not faithfully discharged all his duties, he is not entitled to an allowance for legal services. We do not think the statute contemplates the allowance for such service in a case like this. R. S. 1889, sec. 222; Jacobs v. Jacobs, 99 Mo. loc. cit. 436, and authorities there cited. Nor do we think the court erred in sustaining the relator's tenth exception and disallowing the said item of $500, allowed by the referee for "fees of attorneys."

V. The defendant was allowed by the referee the sum of $708.26 commission, and in which was included $189.37 —or five per cent on $3,787.44, the amount of money transferred to Kentucky. The relator excepts to said allowance, claiming that the defendant was not entitled to receive the same. It is conceded that the transfer was not made in conformity to provisions of the statute. R. S. 1889, secs. 5316, 5317. The transfer was made by the defendant and a credit was allowed him in his annual settlements for a part thereof. Whether in a case where a curator and his ward are nonresi-

dents of this state, and the ward is entitled to personal property in this state, such property may be transferred to the state where the latter resides, is a matter resting, under the statute, largely in the discretion of the probate court in the state having jurisdiction of the estate of such ward. In re Wilson, 95 Mo. 184. The discretion of the probate court was not primarily exercised in the matter—no opportunity having been afforded it for the exercise of such discretion. It is true, after the transfer was made it recognized the act of the defendant as proper, or otherwise it would not have allowed him a credit in his settlements for the amount of the transfer so reported. The transferred fund was applied to discharge the burdens resting on the estate of Archie L. Hamilton, deceased, to which the defendant's wards were entitled, and therefore it was used for the purpose which it would ultimately have been applied had the transfer been made in the manner required by the statute. The fund thus transferred to the defendant in Kentucky was by him paid to the guardian of his wards in Kentucky, to the widow of Archie L. Hamilton, deceased, in conformity to a provision of his will, and to the executor of the will. It therefore seems the defendant's wards received the full benefit of the transferred fund, as fully as if it had been regularly transferred; and that, perhaps, was the reason why the probate court allowed defendant credit in his settlements for the reported amount thereof. The statute—section 5334—provides that, guardians and curators shall receive for their services such compensation as shall seem to the probate court to be just. The amount of such compensation is left very much in the discretion of that court. And we are not prepared to say that an allowance by the probate court, or by the referee of five per cent commission on the amount of the transferred fund was illegal or unjust. The relator's tenth exception to the report of the referee allowing the defendant said commission of $189.44 was improperly sustained.

VI.   The defendant was allowed by the probate court, in his first settlement, a credit for $64.50 for his expenses in coming to this state to qualify as curator for said wards.   This, the referee disallowed, and rightfully so, too, as we think. We have been referred to no law or precedent authorizing such a charge.   We think it was clearly illegal.

The referee disallowed a credit given defendant in his first settlement for $33.44 paid John Ficklin, agent.   As there seems to have been no evidence adduced to overcome the *prima facie* correctness of this item, the referee should have allowed it.   The court erred in overruling the defendant's third exception as to said last referred to item.

VII.   The relator excepted to the report of the referee allowing defendant as credits certain items, viz.: $163, $362.50, $160, $388.87, $881.49, paid to J. C. Ficklin; also, $62.50, $197.82 and $139 paid to R. G. Tabor.

It was disclosed by the evidence that Ficklin, a resident of this state, had been long and favorably known to defendant as a faithful and capable business man.   The latter selected the former to act in the capacity of steward to manage the estate of his wards in this state.   It seems to be in effect conceded that the curator of these wards was entitled to the services of a steward in the management of the estate of such wards in this state.   Not only was defendant but also the relator, the present curator, accorded by the probate court the right to employ such steward at the expense of the estate.   It does not therefore seem to be questioned but that' the defendant, in the exercise of the care and prudence exacted of him by law, was entitled to have the aid of a steward in the management of the said wards' estate.   The concurrent testimony of the witness was mainly to the effect that his management of the estate was excellent.   When the estate was placed in the charge of Ficklin there was no more than 440 acres of it in cultivation, the remaining 1,000 acres being in wild raw prairie, which he subsequently reduced to

cultivation and made productive. If there was nothing else, the bare fact that during the six years period of his management the estate yielded rents and profits amounting to twenty thousand dollars, indubitably shows that he was an exceedingly careful, capable and faithful steward. The only question is, whether or not the compensation paid him was reasonable and fair. It appears that for the first year he received one hundred dollars, and one hundred and fifty dollars for each succeeding year—and necessary personal expenses, such as railway fare, hotel bills and the like, incurred by him while in the discharge of his duties.

It is contended that the services of a competent steward, residing much nearer the estate then Ficklin did, could have been obtained for the same, or less compensation. That had such a steward been employed by the defendant the items of his personal expense would be nothing, or at least much less than that incurred by Ficklin. It is true, Ficklin lived 150 miles from the estate and his several trips to and from same were not without cost to the wards, still it is more than probable that even with this expense it was more beneficial to the wards to have their estate under his management than under that of a steward living nearer. It is not every farmer who can successfully manage a farm embracing a quarter section of land that has the ability to manage an estate of nearly two thousand acres. It is very doubtful, indeed, whether a steward possessing the requisite capacity and integrity to successfully manage an estate of this magnitude could have been obtained for a less compensation than was paid Ficklin. It is very questionable whether the defendant would have been justified in selecting an untried steward residing near the estate, instead of one like Ficklin, whom he knew to be honest and capable, simply on account of the mere difference in compensation required. We hardly think it can be said that, under the circumstances disclosed by the evidence in this case, the action of the defendant in respect to the employment

of Ficklin was not that which a careful and prudent man would have exercised in the management of his own affairs. There was, it seems to us, abundant evidence to sustain the finding of the referee as to the Ficklin items.

The finding of the referee is a special verdict. The reviewing courts will not go into the weight of the evidence, but will presume the findings to be correct, where there is no clear showing of mistake, if there is any substantial evidence to support it. Manufacturers, etc., v. Iron Co., 97 Mo. 38; Franz v. Dietrick, 49 Mo. 95; Father Matthew Society v. Fitzwilliams, 84 Mo. 406; Caruth v. Wolter, 91 Mo. loc. cit. 489; Daly v. Timon, 47 Mo. 516; Father Matthew Society v. Fitzwilliams, 12 Mo. App. 445. Applying the test of this rule and it is clear that the finding of the referee must stand undisturbed, both as to the Ficklin and the Tabor items. Nothing is seen in the evidence in any way justifying any interference with the finding of the referee as to the Tabor items. The evidence was gone into quite extensively in respect to both the Ficklin and Tabor items, and it is not seen that any injury resulted to the relator by reason of the action of the referee in receiving the same over his objections. No error was committed by the court in overruling the relator's first exception.

VIII. As to the relator's second exception, relating to the allowance of "$24.50, amount advanced for interest on 600 for seven months," it is to be observed that this item does not appear, or if so, not in such a way that we can identify it, in either of the exhibits pleaded in the defendant's answer, nor is there any evidence preserved touching the same; so that, it is our conclusion that it was improperly allowed by the referee.

IX. It does not seem to be disputed that the road tax referred to in the relator's third exception was properly levied against the real estate of defendant's wards, but it is insisted that the same was paid to an officer not authorized to receive

it.   It had been extended on the tax book in the hands of the county collector, who demanded and received it of defendant. It may be and no doubt was true, that this tax should have been collected by a township officer, but as it does not appear that it has ever been claimed by the township, or any officer thereof, or that the payment made by defendant did not discharge such tax, we are not willing, at this late day, to say that the defendant should be required to return the amount of such tax to the estate.   Under the evidence we think the application of the rule just alluded to, in reference to special verdicts, may be properly invoked to sustain the finding of the referee as to this item.

X.   The relator's seventh exception related to the finding of the referee that the defendant was entitled to a credit for $24.06, commission on $481.25 paid Emma Hamilton as the rent of the 360 acres of land of the wards, which was subject to her dower.   This most manifestly was not an item of expense chargeable to the wards of the defendant, and should not have been allowed.

XI.   The relator's exceptions eight and ten have been examined and were, as we think, properly overruled.   And as to his eleventh, what has been said hereinbefore, in respect to another exception, will suffice for the disposition of it adversely to his contention.

XII.   No doubt, many of the objections taken to the introduction of evidence before the referee might, with propriety, have been sustained; but we are unable to discover, from an examination of the report of the referee, that his failure to report any ruling thereon operated to the prejudice of the relator on the merits, or that the result would have been different if such rulings had been made and reported by the referee.

XIII.   We think from an examination of the adjudged cases in this state that the action on the defendant's bond was properly brought.   We have examined with considerable

care the exceptions of both parties to the report of the referee, in connection with their motions for a new trial, and this examination has resulted in the conclusions hereinbefore expressed. We have paid no heed to objections and suggestions that have not for their foundation the action of the court referred to in both the exceptions and motions for new trial. The argument has taken a wide range. We have been invited in the briefs of counsel to go beyond the limits of the issues to consider questions of law and fact, which, of course, we have declined to do. Our conclusion is, that the report of the referee should be modified so as to conform to the views which we have hereinbefore indicated.

It is seen that we have not approved the ruling of the trial court in sustaining the relator's fifth and ninth exceptions, but as to its rulings on all the others, both of relator and defendant, referred to in its finding we have approved. Without repeating the several conclusions hereinbefore stated, it will be sufficient for us to state that the result is that the relator, instead of being entitled to $476.57, as found by the trial court, is entitled to $300.80.

The judgment for the former sum will be accordingly reversed and a proper judgment in lieu thereof will be entered here for $300.80. The cost of the appeal to be equally divided. All concur.