FATHER MATTHEW YOUNG MEN'S TOTAL ABSTINENCE AND BENEVOLENT SOCIETY, Respondent, *v.* JOHN J. FITZWILLIAM ET AL., Appellants.

### June 27, 1882.

1. The report of a referee will not be disturbed as being against the weight of evidence where there is substantial evidence to support it.

2. The obligors in a bond are estopped to deny the corporate existence of the body to whom it was given.

3. A reference properly made does not become erroneous *ex post facto* by reason of admissions against interest, made by the party objecting to the reference, which render an examination of accounts unnecessary.

4. Sureties on the bond of the treasurer of a society are liable for a default in payment of moneys coming into the hands of the treasurer, as such.

5. The treasurer's statement, made in accordance with his duty and during the period covered by the bond but after his removal for misconduct, is competent against his sureties, and is *prima facie* evidence of the facts therein stated.

6. If it does not appear that the appellant could have been prejudiced thereby, the admission of incompetent testimony is not sufficient ground for a reversal of the judgment.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Affirmed.*

LUCIEN EATON and WALKER & WALKER, for the appellants.

GEORGE A. CASTLEMAN, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an action upon a bond executed by Fitzwilliam as principal, and by the other defendants as his sureties. The bond was given to plaintiff, which is alleged to be a corporation, and is dated January 12, 1876. The penalty of the bond is $5,000, and it is conditioned that Fitzwilliam, who has been elected treasurer of the corporation, will faithfully perform his duties as treasurer, account for, and pay over, all moneys and effects which come to his hands whilst in office, and, at the expiration of his term,

upon request, deliver to the society a correct account of all money and property which comes into his custody as treasurer, and pay to his successor in office all money or property which shall be in his hands and due by him to the society. The petition sets out all this, and alleges that Fitzwilliam received large sums of money, for which he refuses to account, and did not, at the expiration of his term, upon request, pay to his successor the sums in his hands and due by him to plaintiff; that there was, at the end of his term, in his hands a balance of $3,695.80, which he refuses to pay plaintiff on request.

The answer of defendants admits the bond as set forth, and the election of Fitzwilliam as recited, but denies, specifically, the incorporation of plaintiff, and, generally, all other allegations of the petition.

The cause was referred, against the objection of defendants. The referee reported in favor of plaintiff, and his report was confirmed, all exceptions being overruled, and there was judgment accordingly.

The report of a referee is as a special verdict. We have repeatedly said that we will not go into the weight of the evidence, but will presume the finding of the referee to be correct, where there is any substantial evidence to support it. In this, we have followed the rulings of the supreme court, as we are bound to do. *Franz* v. *Deitrick*, 49 Mo. 95 ; *Brooks* v. *West*, 3 Mo. App. 582 ; *Wood* v. *Missouri Staats-Zeitung*, 3 Mo. App. 602 ; 9 Mo. App. 577, 579 ; *St. Louis Stoneware Co.* v. *Partridge*, 8 Mo. App. 218.

There is nothing in the objection that there was no evidence of the incorporation of plaintiff. The defendants, who are obligors on the bond, by making and signing the instrument, admit the corporate capacity of the plaintiff, who is the obligee, and cannot, in an action on the bond, plead *nul tiel corporation*. *City* v. *Shields*, 62 Mo. 247. We do not look into the question as to the sufficiency of the evidence introduced as to plaintiff's incorporation.

The plaintiff offered the certificate of incorporation issued to it by the circuit court; the referee found this competent and sufficient. We see no reason to doubt the correctness of his conclusion in this respect; but the matter is immaterial, owing to the estoppel.

Appellants contend that the case was improperly referred against their consent. It is certain that the permission to refer the whole issue without consent, applies only to cases in which accounts exist between the parties and require examination. It was not the intention of the legislature to take away the right to a jury trial, except in cases where an account was directly involved in the issue. *Thornton* v. *Life Assn.*, 7 Mo.. App. 544. And the statutory requirement is, that the account should be " a long account."

The petition showed that the claim was for a " balance " due by the treasurer of a corporation for moneys received by him, from time to time, during the time that he was treasurer. It was to be presumed that this involved the examination of receipts and disbursements. The record shows that numerous receipts admitted to have been signed by Fitzwilliam were admitted in evidence, and objected to on no other specific ground than that most of them were not within the term of office contemplated by the bond. It is true, exhibits in the nature of admissions by Fitzwilliam were also introduced, and these were held by the referee to make out a *prima facie* case, and his finding seems to have been based upon them taken together with the oral testimony of Fitzwilliam. But appellants claimed and claim that these exhibits were incompetent for any purpose. The action was certainly not upon the exhibits, which were merely evidential facts. Upon the whole, we think that the case was one in which the pleadings showed to the court that an examination of accounts was necessarily involved, and that the order of reference did not become erroneous *ex post facto* because the introduction at the trial of certain admissions against interest may have

superseded to some extent an examination of accounts and comparing of debts and credits which it might otherwise have been necessary to go into more at length.    All this will appear more fully in considering the objections to evidence.

It appears that Fitzwilliam was treasurer of plaintiff during the years 1874 and 1875, and, on January 11, 1876, was again elected his own successor for one year. He executed the bond in suit on January 12, 1876, and delivered it on the 6th of February following.    From the latter end of March, 1876, until July, Fitzwilliam was in bad health and absent a great deal.    In July he went to Ireland, returning in September.    His duties were performed during a part of 1876 by a committee, and in May, 1876, a treasurer *pro tempore* was appointed by plaintiff. On the 8th of January, 1876, Fitzwilliam had made a statement to plaintiff showing a balance in his hands of $3,260.21.    On November 12, 1876, plaintiff, after many attempts, got from Fitzwilliam a statement which showed his receipts and disbursements without taking into account the transactions of the committee or temporary treasurer. This statement refers to the former statement, and begins by charging him with the balance shown to be due by that statement.    This second statement shows a balance in his hands to date, of $3,695.69.    The first statement is called exhibit 3, and the second exhibit 2.    In answer to questions of the auditing committee as to where this balance was, Fitzwilliam replied that it was none of their business, and he has paid no part of it.    But he delivered up a note he held, made by the society, and the referee gives him credit for that and for some counterfeit money, reporting the indebtedness at the date of suit, as the balance in exhibit 2, less these items, making $3,188.69 due at that date.

If Fitzwilliam held these moneys in trust for plaintiff at the date of the bond sued on, there can be no doubt under the evidence that plaintiff ought to recover.    He failed to pay them over, and this was a breach of the conditions of

the bond. Those who were the sureties when the defalcation occurred would be liable. *State to use* v. *McCormack*, 50 Mo. 548. But if Fitzwilliam had no part of this money on hand when the bond sued on was given, he committed no defalcation during the term covered by that bond, and his sureties on that bond are not liable for his former defaults.

The referee admitted exhibit 3, considering that this was made competent by the reference to it in exhibit 2. Nor do we see how, if 2 was competent, 3 could prejudice defendants. Three is the report of Fitzwilliam, as treasurer, from December 1, 1875, to January 8, 1876, a period not covered by the bond in suit, showing a balance due on January 8th, of $3,260.61, which is the item on this exhibit. Exhibit 2 is the report of the same treasurer, furnished on November 12, 1876. The first item on the debit side is $3,260.61, the balance on January 8, 1876, from No. 3, and the last item is $3,695.69, set down as the balance in the hands of the treasurer on August 2, 1876.

We think that exhibit 2 was competent. It was an accounting made by Fitzwilliam as treasurer in discharge of the duties of his office. It purports to show only the individual transactions of Fitzwilliam, without taking into account at all any receipts or disbursements of those who took his place during his absence. The constitution of the society requires the treasurer to report monthly the condition of the treasury, and to make an annual statement. This statement includes no time not covered by the bond in suit; and though it was made by Fitzwilliam after his removal for misconduct, it was made in pursuance of his duty as treasurer, during the term for which he was elected, and which was covered by the bond of defendants, and it is an express condition of their bond that such a statement shall be made at the expiration of the treasurer's term. It was admitted by the referee as tending to show that, at the date of the balance brought down, August 6, 1876, Fitzwilliam

had the money on hand which that statement called for; and we think it made out a *prima facie* case as to that. Until the contrary is shown, the presumption is that the treasurer had on hand the moneys with which he thus charged himself. The sureties might have ascertained, by proper application, with what amount the treasurer stood charged by his settlements at the time they went on his bond. By the terms of his bond the treasurer was bound to account for the moneys received by him, or on hand during the last year, and to pay them over to his successor. This was a part of his duty, and the sureties became liable by express terms of the bond for any default in this regard. It has been held in Illinois (*Roper* v. *Sangamon Lodge*, 91 Ill. 518), that where an officer of a secret society is re-elected, and becomes his own successor, and, at the beginning of his second term, reports a certain sum in his hands, and gives bond with sureties to account for and pay over the moneys coming to his hands during the term, his sureties, when sued, will be responsible for the sum so reported in his hands, and will not be allowed to show that the defalcation in fact occurred during the previous term. And in Iowa (*Boone County* v. *Jones*, 54 Iowa, 701), where the county treasurer is required by law to make settlements in January and June of each year, it is held that those settlements estop him and his sureties to deny that he had on hand the moneys shown by his settlement at the time, and to shift the defalcation back to a former period, because this would not only be contrary to public policy, but would be to allow the treasurer to take advantage of a wrong by which he deceived the county to its injury. And in Virginia (*Baker* v. *Preston*, Gilm. 235) it was held, that the books kept by the treasurer are conclusive evidence against him and his sureties of the balance actually in the treasury at any given time. But this seems to have been on the ground of public policy, and because the books were public, and the officer a sworn public officer. We think, with the referee

and the judge of the circuit court, that the statement made in exhibit 2, and the first item in that statement, were evidence tending to show that, at the date of the bond in suit, the treasurer had the amount set forth with which he charged himself, and which he was bound to have on hand. The only other evidence as to the matter is his statement on the witness-stand.   He says he thinks he had not the amount on hand which constitutes the first item in exhibit 2, at the beginning of the term covered by the bond in suit, and that he thinks he had the $3,260.61, mentioned in exhibit 2, at the date of the bond.   But he does not say positively that he did not have on hand at the date of the bond the amount which, by the exhibit, he ought to have had, and gives no intimation as to when the defalcation occurred. As we have said, the weight of the evidence was for the trier of the fact.

The minute book of plaintiff's society was introduced before the referee, and certain entries of proceeding from October 8, 1876, to January 11, 1877, were read in evidence and objected to as incompetent and irrelevant.   These entries showed the appointment of a committee, and its efforts to obtain a settlement from the treasurer, and their demand upon him for the amount acknowledged by him to be due.   We see nothing in any portion of this evidence by which defendants could be prejudiced.   The evidence, independently of the entries in this book, is clear and undisputed, that Fitzwilliam acknowledged a balance in his hands due the society on January 7, 1876, of $3,260.61, and a balance on August 2, 1876, of $3,695.95, from which last sum the referee deducted the credits for the cancelled note and loss on counterfeit money, being the only deductions from the last balance which there is any evidence to support.

We see no ground for reversing the judgment.   It is therefore affirmed, with the concurrence of all the judges.