Coxe Bros. & Co. vs. Milbrath.

Coxe Bros. & Co., Respondent, vs. Milbrath, Appellant.

*May 1 — May 21, 1901.*

*Suretyship and guaranty: Statute of frauds: Consideration: Memorandum: Appeal: Application of payments: Evidence: Witnesses: Refreshing memory: Impeachment:* Res gestæ.

1. A written instrument addressed to plaintiff, which stated that the undersigned agreed to extend an existing guaranty of the credit of a third person for a certain time, to cover sales to be made during such time, is a valid memorandum relating to *future sales,* and sufficiently expresses the consideration within the statute of frauds (sec. 2307, Stats. 1898) requiring a contract to answer for the debt, etc., of another to express the consideration.

2. Where a creditor receives a guaranty only covering credit to be extended to the debtor in the future, and afterwards receives a payment from the debtor without any application thereof by him, the creditor has the right to apply it to the oldest item of the account between them, even though it arose before the guaranty.

3. It is only when the memory needs assistance that resort may be had to memoranda to refresh the memory of a witness, and where a witness does not admit weakness of memory or inability to remember the facts as he understands them, no proper foundation is laid for the use of such memoranda and they should be promptly ruled out.

4. Where a suit is brought against the guarantor of the credit of a debtor, and the guarantor relies on a payment made by the debtor, alleged to have been applied in payment of the account sued on, conversations between the debtor and plaintiff's agent as to the state of the account, and letters written by the debtor to such agent requesting him to misrepresent to the guarantor the state of the account, are irrelevant and not admissible against the guarantor's objection.

5. Had such letters and the conversations related only to matters of impeachment, a general objection would be a waiver of the failure to lay a proper foundation for the evidence.

6. A letter written three days before the transaction in issue is not admissible as a part of the *res gestæ.*

Appeal from a judgment of the superior court of Milwaukee county: J. C. Ludwig, Judge. *Reversed.*

On August 1, 1895, the defendant executed and delivered to plaintiff a guaranty, of which the following is a copy:

"*Whereas*, Otto Kornreich is indebted to *Coxe Bros. & Co.,* Inc., on open account, for coal heretofore sold and delivered by *Coxe Bros. & Co.*, Inc., to him, in the sum of thirteen hundred and one $\frac{11}{100}$ dollars.

"*And whereas*, Otto Kornreich intends to purchase of *Coxe Bros. & Co.*, Inc., further amounts of coal from time to time after the date hereof.

"Now, in consideration of the premises and one dollar to me in hand paid by *Coxe Bros. & Co.*, Inc., the receipt whereof is hereby acknowledged, I guarantee the payment to said *Coxe Bros. & Co.*, Inc., of the said sum of thirteen hundred and one $\frac{11}{100}$ dollars, now owing to them from said Otto Kornreich; and I further guarantee the payment to *Coxe Bros. & Co.*, Inc., of all further sums which may become due and payable to them from said Otto Kornreich at any time or times hereafter before the 1st day of August, A. D. 1896.

"Milwaukee, August 1st, 1895.

"C. W MILBRATH."

At the time this guaranty expired, Kornreich owed plaintiff $870.78. It continued to sell coal to him, and he made payments from time to time, so that on January 18, 1897, there was a balance due plaintiff of $3,528.64. On that date defendant delivered to plaintiff a writing in the following form:

"Milwaukee, August 1st, 1896.

"*Coxe Bros. & Co., Inc., City:*

"I hereby extend the guaranty of O. Kornreich's account, which expires to-day, to an amount not exceeding twenty-five hundred dollars, until May 1st, 1897.

"Yours very truly,

"C. W. MILBRATH."

Thereafter more coal was furnished and payments made, so that, when the alleged extension expired, Kornreich owed plaintiff $1,583.29. The coal furnished between January 18, 1897, and the date when the extension expired was of the value of $1,859.57. It is to recover the balance due as above stated that this action was commenced, the plaintiff

founding its right of recovery upon said extension agree-
ment.  The answer, after sundry denials, sets up payment
by defendant to plaintiff of the sum of $2,000, and other
payments by Kornreich, so that there was nothing due
plaintiff from defendant at the time the action was com-
menced.  On the trial it appeared that the plaintiff had been
importuning Kornreich to pay.  On March 20, 1897, he de-
livered to plaintiff his promissory note, indorsed by defend-
ant, to apply on account.  The only issue submitted to the
jury was whether this note was delivered to, and accepted
by, plaintiff's agent, to be applied on defendant's guaranty.
The jury found in the negative.  Thereupon judgment was
rendered in favor of plaintiff for balance due, as above
stated, with interest.  A new trial was denied, and the de-
fendant has appealed, claiming that the extension agreement
is void under the statute of frauds, that the verdict is con-
trary to the evidence, and that certain evidence produced on
the trial was improperly admitted.

For the appellant the cause was submitted on the brief of
*Julius E. Roehr.*

For the respondent there was a brief signed by *Van Dyke
& Van Dyke & Carter,* and oral argument by *G. D. Van Dyke.*

BARDEEN, J.  1. The plaintiff claims that the two papers
offered in evidence should be read together as one instru-
ment, and that by so doing they are not repugnant to the
requirements of sec. 2307, Stats. 1898, that a consideration
shall be expressed.  As we view the situation, a decision of
this question is not essential to support the plaintiff's cause
of action.  The extension agreement was made January 18,
1897.  After that date the plaintiff furnished Kornreich
coal of the value of $1,859.57.  If the new agreement is
valid as to coal furnished after its execution, unless it be
held that the note given by defendant must be applied upon
the guaranty, the judgment must be sustained so far as this

point is concerned. When one approaches a consideration of a question arising under the statute of frauds, he is met with a wilderness of decisions, not always harmonious. Whatever might be our views if the question were a new one, the necessity of following blazed lines, and keeping the way unembarrassed by close distinctions, is manifest. In *Williams v. Ketchum*, 19 Wis. 231, this court held that a memorandum to the effect that the signer would be responsible for the purchase of goods by one party from another, until notice to the contrary, was equivalent to saying to the party that, if he would sell goods to the third party, the signer, in consideration thereof, would be responsible for the amount of such sale until notice to the contrary. It then said that "it has been uniformly held that such memorandums relating to *future sales* do express, not in so many words, but as gathered from the whole instrument, the consideration, and are valid." In *Waldheim v. Miller*, 97 Wis. 300, the guaranty was as follows: "I hereby guarantee account of Edward Bliven to Waldheim & Co. for $221.25, at $40 per month; the payments commencing September 8, 1894." Parol evidence was admitted to show that the account named was not an already existing account, but one about to be contracted, and which was not in fact contracted until after the guaranty was given. The court said: "This made a valid, present consideration, which is sufficiently expressed in the writing to satisfy the statute." The guaranty in suit easily comes within the rule of those cases, and is valid as to sales made after its delivery. Even if we admit that the guaranty limited total sales to $2,500, the situation is not changed. The evidence shows that after its delivery the total sales amounted to only about $1,800. When payments were made, no application of them was made by Kornreich. The plaintiff had a right, as it did, to apply payments on the oldest item of the account. Brandt, Suretyship & G. § 330.

Coxe Bros. & Co. vs. Milbrath.

2. The argument that the verdict was contrary to the evidence was properly addressed to the trial court. His decision cannot be overturned, unless we can say it was palpably wrong. The evidence regarding the question whether the note indorsed and paid by defendant was to be applied on the guaranty was sharply in dispute. There is evidence on both sides, and no such preponderance as would warrant us in disturbing the ruling of the trial court.

3. The question regarding the application of the note mentioned upon the guaranty was the all-important question of fact in the case. Plaintiff's Milwaukee office was in charge of its agent, Mr. Kuesel. He was called as a witness for plaintiff, and after stating his attempts to make collection from Mr. Kornreich, and the receipt of the note by him, he was asked: "Did you, while the receipt of that note was fresh in your memory, make any written memorandum of any kind in regard to that transaction?" He replied that he wrote a letter, and that he had refreshed his recollection therefrom. Upon his earlier examination, he had testified that defendant had delivered the note to him. Kornreich testified that he secured the note from defendant, and delivered it to Kuesel, upon the understanding that it was to apply upon the guaranty. It was to rebut this testimony that the question referred to was propounded. Defendant objected to the testimony as not being proper because the letter was not produced. Thereupon the letter was produced and identified, and the record shows the following proceedings:

"*Plaintiff's counsel:* We offer the letter in evidence. (*Objected to.*) *Court:* I will not allow it to go in evidence at this time, but the witness can use it as a memorandum to refresh his memory. (*Exception.*) *Plaintiff's counsel:* We now offer the letter in evidence in connection with the witness's testimony. (*Objected to as incompetent. Objection overruled. Exception.*) *Court:* Of course, the rule is very peculiar in respect to that; very unsettled."

The witness then testified that he had read this letter, and was positive that Mr. Kornreich did not deliver the note to him, and that it was not true that he told him it was to apply on the guaranty. He then spoke of a conversation with defendant at the time he paid the note, and produced another letter, written four days after the note was paid, from which he had refreshed his recollection. The following, with reference to this letter, appears in the record:

"*Plaintiff's counsel:* I suppose that is subject to the same ruling your honor has made.   I will now offer it in evidene. (*Objected to.*)   *Court:* The rule is that when the witness has an independent present recollection the paper will not be admitted in evidence, while if he has no present recollection, but testifies from his conviction as to the papers, it will be admitted." " *Court:* I will state here, in connection with the other ruling, that although I may refuse to let the paper go in evidence, the rule is well settled that the opposing counsel and the jury have a right to inspect the paper from which the witness has testified, but it does not follow from that that it should go in evidence.   But it can be used, and should be given, for the instruction of both counsel and jury."

There is nothing appearing in the case going to show that the witness was at all infirm in his recollection of the facts in controversy.   He does not at any time admit weakness of memory or inability to remember the facts as he understands them.   A very complete and helpful discussion of the law of evidence in relation to the use of memoranda to refresh the memory of witnesses is contained in Jones, Ev. §§ 877–886.   After discussing the mode of using the memoranda, at section 883 he says: " It is hardly necessary to state that it is *only when the memory needs assistance* that resort may be had to these aids, and that, if the witness has an independent recollection of the facts inquired about, there is no necessity or propriety in his inspecting any writing or memorandum."   We are unable to determine from the record to what extent these letters were used before the jury.

Coxe Bros. & Co. vs. Milbrath.

The defendant's counsel assumes that they were in evidence, while the other side claim they were not. As to the first letter, there was an unqualified offer of it in evidence, an objection, which was overruled, and an exception. Later remarks of the court raise some doubt of whether he considered it was in evidence. The ruling mentioned puts the first letter in evidence. Unless the witness needed it to aid his memory, it had no place in the case. Without the proper foundation being laid, the court should have promptly ruled both letters out.

Testimony was also offered and received of conversations between plaintiff's agent and Mr. Kornreich confirmatory of plaintiff's case, and in contradiction of the testimony given by him. A general objection was overruled, and a motion to strike out denied. Several letters written by Kornreich to Kuesel were also produced and admitted. Some of them tended to contradict the testimony of the writer, while others had a direct bearing upon other features of the case. None of them was admissible as against the defendant. Had they and the conversation mentioned related only to matters in impeachment of the witness, the failure to make the objection in proper form might be considered a waiver of the failure to lay a proper foundation for the evidence. Jones, Ev. § 849. But such is not the fact. Conversations generally about the state of account, the letter regarding the request of Kornreich for Kuesel to misrepresent the state of his account to defendant, had no relevancy to the issue being tried. The letter had a tendency to impeach the general character of the witness. It was not a part of the *res gestœ*, as it was written several days before the note was executed. For the errors in the reception of evidence, the judgment must be reversed, and a new trial had.

*By the Court.*— So ordered.