3] 'AUGUST TERM, 1911. 573

United American Fire Ins. Co. v. American Bonding Co. 146 Wis. 573.

UNITED AMERICAN FIRE INSURANCE COMPANY, Respondent, vs. AMERICAN BONDING COMPANY OF BALTIMORE, Appellant.

*April 7—October 3, 1911.*

*Surety bonds: Embezzlement by agent: Evidence: Competency: Admissions by agent after resignation: Application for bond: Warranties: Waiver: Construction of bond: Conditions precedent or subsequent.*

1. In an action against a surety company upon its bond to indemnify an employer for any losses sustained through larceny or embezzlement committed by his agent, declarations or admissions made by the agent after his employment had ceased are not admissible against the surety.

2. But where, under his contract, it was the duty of the agent, after his resignation, to collect and remit .moneys and to render an account or O K an account compiled from statements rendered by him, his acts in performing such duties (including his statement that he had collected the moneys shown by such account) were a part of the *res gestæ* and admissible in evidence against the surety to show that the agent had collected and retained moneys of the employer. KERWIN and TIMLIN, JJ., dissent.

3. The application for a surety bond stated that the agent to be bonded would remit moneys received on the 10th of each month, that he would not be permitted to retain balances, and that his accounts and books would be inspected, audited, and verified at least once a month. These statements were to be warranties and to form part of and be conditions precedent to the issuance, continuance, or renewal of the bond; and the bond itself stated that the representations made by the employer were warranted to be true. The bond provided that the employer should observe all due and customary supervision over the agent for the prevention of default and that there should be a careful inspection of his accounts and books at least once in every twelve months. *Held*, that these latter provisions determined what was required in the way of inspection and supervision, superseding what was stated in the application, and waiving any other or further requirements in reference thereto.

4. Requirements in such a bond that the employer should immediately notify the surety of any default on the part of the agent and should exercise due and customary supervision over the

agent, not being declared conditions precedent to a right of recovery, constituted merely conditions subsequent, breach of which the surety must plead and prove as a part of its defense in order to defeat a recovery.

5. Such an indemnity bond, entered into by the surety for a money consideration, has all the essential features of an insurance contract, and, being prepared by the surety, should be construed most strongly against it where there is any ambiguity in the provisions, conditions, or exceptions which tend to work a forfeiture.

KERWIN and TIMLIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

The plaintiff is a fire insurance company. One Greene was appointed as its agent to represent it in Chicago. Said Greene was employed under two contracts, one written and one oral. The written contract authorized the agent to write surplus lines of insurance in certain specified states. It ran for one year from March 1, 1908, and authorized the agent to receive proposals for insurance, fix rates of premium, receive moneys, countersign, issue and renew and consent to the transfer of policies, subject to the regulations of the company. The compensation fixed was a stipulated percentage on the business written. The contract obligated the agent to furnish a monthly account of the business written each month and not later than the 10th day of the following month, and provided that "remittances to cover the balances due to the party of the first part shall be forwarded not later than the end of the second month following in which the business is written." The evidence as to the contents of the oral contract is somewhat indefinite. It permitted the agent to write local business in Chicago and to write insurance on whisky stored in bonded warehouses, wherever located, in the United States. The commission was the same as that stipulated in the written contract, but the evidence is silent as to how the business should be reported and when it should be remitted for. As a matter of fact a daily report was sent to the company of each

policy written, which was in effect an abstract of the so-called written portion of the policy. At the end of each month a statement was made up showing the number of each policy issued during the month, to whom issued, the rate of premium charged thereon, the amount of the insurance, and the aggregate amount of the premium on the policy. On the reverse side of this statement the agent charged himself with the aggregate amount of the premiums, less the amount paid out for return premiums on cancellations, and credited himself with his commission, postage, and taxes, if any. The balance represented the amount due to the company on the month's business. It was shown by the testimony in the case, however, that both of the parties understood that these monthly statements showed the amount of business written and did not show what premiums had been collected and what had not been.

The plaintiff applied to the defendant for a bond to indemnify it against default on the part of its agent. The application is dated April 2, 1908, but was for a bond to run for one year from February 1, 1908. The bond issued pursuant to the application was dated April 17, 1908, and covered the period specified in the application. It indemnified the plaintiff against loss sustained by larceny or embezzlement committed by its employee, but did not cover any losses that the agent might suffer by extending credit to policy-holders of the plaintiff. The agent resigned his position about December 1, 1908, and the plaintiff contends that the agent embezzled money belonging to it in the sum of $2,904.80, to recover which amount this action is brought against the surety. The secretary of the plaintiff testified that the resignation took place about November 1st, but the monthly accounts rendered by the agent showed that he transacted the usual volume of business as agent during the month of November.

The defense rested substantially on two propositions: (1) That there was no proof of embezzlement made in the

case; (2) that the plaintiff had forfeited its right to recover upon its bond by reason of having violated the representations contained in its application for the bond, and also by reason of its having violated the conditions of the bond itself. At the close of the testimony the court directed a verdict in favor of the plaintiff, and from the judgment on such verdict the defendant appeals.

For the appellant there were briefs by *Churchill, Bennett & Churchill,* and oral argument by *W. H. Churchill.*

For the respondent there was a brief by *Flanders, Bottum, Fawsett & Boltum,* attorneys, and *James G. Flanders,* of counsel, and oral argument by *James G. Flanders.*

The following opinion was filed June 1, 1911:

BARNES, J. The bond sued on obligated the surety to "make good to the employer, within sixty days, any loss sustained by the employer by larceny or embezzlement committed by the employee during a term" of one year from February 1, 1908. The appellant contends that no competent proof was offered to show that the agent, Greene, had collected or at any time had in his hands any money belonging to the plaintiff which had not been paid to it, and that the court erred in directing a verdict for the plaintiff and in refusing to direct one for the defendant. The plaintiff insists that the required proof was presented.

The agent of the plaintiff admitted to its secretary on December 22, 1908, that he had collected and used $2,800 of money belonging to the plaintiff. The total amount due or to become due the plaintiff for collected and uncollected premiums at this time, according to statements rendered by the agent, was $3,604.80. Of this amount $700 was paid after December 22d. A statement of account was compiled by the plaintiff from the daily reports and monthly accounts rendered by the agent, which was submitted to the latter on May 17, 1910, and showed a balance of $2,904.80. This

statement is Exhibit 29 of the record. The agent then admitted the correctness of the account and that he had collected and retained the entire balance shown by the account. It is suggested that this evidence was modified by the witness on cross-examination, but such is not the fact. If this testimony was competent, a *prima facie* case of embezzlement was made by plaintiff, as the evidence showed the volume of business done by the agent, the amount of his principal's money which he received and converted to his own use, and repeated demands that he pay the money over.

It is conceded by both parties that any admission by the agent of the amount of money in his hands belonging to his principal, made prior to his resignation, would be competent evidence against the surety. *Goldman v. Fidelity & D. Co.* 125 Wis. 390, 396, 104 N. W. 80, and cases cited. It is contended by the defendant, however, that such admissions were made after the agency was terminated and were therefore incompetent. There are many cases holding generally that declarations or admissions made by an agent when his employment has ceased are not competent in an action by the principal against the surety. *Lee v. Brown,* 21 Kan. 458; *Knott v. Peterson,* 125 Iowa, 404, 407, 101 N. W. 173; *Wieder v. Union S. & G. Co.* 42 Misc. 499, 86 N. Y. Supp. 105; *Chelmsford Co. v. Demarest;* 7 Gray (73 Mass.) 1, 7; *Lewis v. Lee Co.* 73 Ala. 148; *Trousdale v. Philips,* 2 Swan (Tenn.) 384; *Bocard v. State ex rel. Stevens,* 79 Ind. 270; *Shelby v. Governor,* 2 Blackf. 289; *Dobbs v. Justices,* 17 Ga. 624, 630; *Wheeler v. State,* 9 Heisk. 393, 397; *Union Sav. Asso. v. Edwards,* 47 Mo. 445; *Ayer v. Getty,* 46 Hun, 287; *Eichhold v. Tiffany,* 20 Misc. 680, 46 N. Y. Supp. 534; *Blair v. Perpetual Ins. Co.* 10 Mo. 559; *Hodnet's Adm'x v. Pace's Adm'r,* 84 Va. 873, 6 S. E. 217; *Hatch v. Elkins,* 65 N. Y. 489; *Stetson v. City Bank,* 2 Ohio St. 167. The cases in this court bearing on the question are *Stone v. Northwestern S. Co.* 70 Wis. 585, 587, 36 N. W. 248; *Coxe Bros. & Co. v. Mil-*

*brath,* 110 Wis. 499, 505, 86 N. W. 174; *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 212, 99 N. W. 366; *New Home S. M. Co. v. Simon,* 113 Wis. 267, 89 N. W. 144. None of these cases present the same facts as does the case before us.

It was the duty of the agent under the written contract to remit for the business written in October not later than December 31st, and for that written in November not later than the 31st of January following. The time for making remittances for business written under the oral contract does not appear. The agent tendered his resignation about December 1st, and after that time wrote no new business. It was still the duty of the agent after his resignation to make remittances during the months of December and January, according to the terms of his contract, and to collect any outstanding premiums that were unpaid and to account for and remit such premiums to the plaintiff, less his commission and expenses. This much satisfactorily appears from the whole record. Even if the record were silent, the duty of an agent to account for moneys coming into his hands is well settled. See collection of cases found in 31 Cyc. 1470, note 90, and 2 Am. & Eng. Ency. of Law & Pr. (2d ed.) 1070 and 1057. Even after his resignation it was contemplated that Greene would continue to perform his former duties of collecting premiums due to the company and of remitting the same to it. The agent did not make up Exhibit 29, but it was compiled from statements which he had rendered, and the only thing in reference thereto which it was necessary for the plaintiff to be advised upon was whether or not the business reported as having been written had been paid for by the policy-holders to the agent. When he stated that all of the moneys had been collected he was not making a mere casual remark, but was discharging a duty that devolved upon him under his old contract.

The question we have before us, therefore, is, Where an agent renders an account or O K's an account submitted to

him after his employment has ceased, but which it is his duty under his contract to render or to O K, as the case may be, is that act a part of the *res gestœ* and admissible in evidence as such in an action against the surety? There is no question but that if the statement had been O K'd while he was still actively engaged as agent for the plaintiff it would be receivable in evidence against the surety. Should that rule be extended beyond the term of employment? The case to which our attention has been called that bears most directly on the subject is *Father Matthew Y. M. T. A. & B. Soc. v. Fitzwilliam,* 12 Mo. App. 445, 449, which was affirmed in 84 Mo. 406. There the treasurer of the society had been removed for dishonesty. After his removal he made a statement showing the amount of his defalcation, which was admitted in evidence in an action against the surety. The latter claimed that the evidence was incompetent, but the court held that it was the duty of the treasurer to make up a statement of his account, and, such being the case, what he did in this regard was as much a part of the *res gestœ* as if the work had been done before he had ceased to be treasurer. Some significance is given to the fact that the statement was made during the term of office for which the defaulting treasurer had been elected, but we fail to see how this fact can have very much weight in determining whether the evidence was admissible or not. He was not the treasurer when the statement was made. It has also been held that where it is the duty of a public officer to render an account of the moneys in his hands as such officer, but he fails to do so before the expiration of his term, a performance of such duty thereafter renders the admissions made competent evidence against the surety. *Townsend v. Everett,* 4 Ala. 607, approved in *Lewis v. Lee Co.* 73 Ala. 148; *Jenness v. Blackhawk,* 2 Colo. 578; *Wyche v. Myrick,* 14 Ga. 584. These cases are quite analogous in principle to the one before us. Other authorities holding that the true test of admissibility is whether the admission is made in the course of

official duty are 1 Greenleaf, Ev. (16th ed.) § 187; *Douglass v. Howland*, 24 Wend. 35, 59.    See, also, 2 Wigmore, Ev. § 1077.

We perceive no very good reason why, where an agent does an act which it is his duty under his contract to perform, evidence of that act after his principal duty as agent has ceased should not be admissible as well as if made during the time he was actively performing his duties, and we think it would be the better rule to hold such testimony competent.    We conclude, therefore, that a *prima facie* case of embezzlement was made, there being no evidence offered by the defendant upon the question.

In the application of the plaintiff for a surety bond it was stated (1) that the agent would remit on the 10th of each month; (2) that he would not be permitted to retain balances; (3) that his accounts and books would be inspected, audited, and verified at least once a month; and (4) that his outstanding accounts would be verified at least once a month.    It was further stated that it was agreed that the answers of the applicant should be warranties and form part of and be conditions precedent to the issuance, continuance, or renewal of the bond.    The bond itself contained a statement that all "the representations made by the employer . . . to the surety are warranted to be true."    This probably refers to the representations contained in the application for the bond.

The appellant claims that it was incumbent on the plaintiff to prove the truth of the representations made as a condition precedent to the right of recovery.    The respondent contends that the representations were mere warranties or conditions subsequent which should be pleaded and proven as a defense.

The question whether the representations were conditions precedent or warranties is not very material, however, inasmuch as these conditions and the breach thereof were pleaded as a defense, and the proof showed that the agent did not remit on the 10th of each month; that he was permitted to re-

tain balances, and that his books and accounts were not au-dited monthly, and that his outstanding accounts were not verified monthly. It is true that the plaintiff denied knowl-edge of the fact that the agent was withholding remittances, but it did not comply with its representations in endeavoring to ascertain what the fact was. There is hardly a pretense of having complied with the agreement to inspect and audit books and accounts and to ascertain what accounts were un-paid.

The question arising on the application, therefore, is not whether we. are confronted with conditions precedent or war-ranties, but whether the representations made affect the plaint-iff's right of recovery in any aspect of the case.

The bond provided that the employer should observe "all due and customary supervision over said employee for the prevention of default, and that there shall be a careful in-spection of the accounts and books of said employee at least once in every twelve months from the date of this bond," etc. We think this provision of the bond determined what was re-quired in the way of inspection and supervision and super-seded what was stated in the application and waived any other or further requirement in reference thereto. The applicant was required to do certain specific things in the way of in-spection and to exercise due and customary supervision over the agent, by the terms of the bond. The surety substituted its own requirements for the things which the applicant said it would do.

The bond provided that the employer should immediately notify the surety of any default on the part of the agent. The evidence does not disclose whether this notice was given or not. Neither is there any evidence on the question of whether the plaintiff exercised "due and customary super-vision" over its agent. If it was incumbent on the plaintiff to show that notice of the default was given or that it exercised due and customary supervision over. its employee, as a condi-tion precedent to its right of recovery, then a verdict should

have been directed for the defendant. If these were defensive matters, the ruling of the court was right. The bond in question was an indemnity contract entered into by the defendant for a money consideration. It has all the essential features of an insurance contract and should be subject to the rules of construction applicable to such contracts. *Champion Ice Mfg. & C. S. Co. v. Am. B. & T. Co.* 115 Ky. 863, 75 S. W. 197; *Title G. & S. Co. v. Bank of Fulton,* 89 Ark. 471, 117 S. W. 537; *Bank of Tarboro v. Fidelity & D. Co.* 128 N. C. 366, 38 S. E. 908. It being apparent that the bond sued on was prepared by the defendant, as to any ambiguity therein the provisions, conditions, and exceptions of the bond which tend to work a forfeiture should be construed most strongly against the party preparing the contract. *French v. Fidelity & C. Co.* 135 Wis. 259, 265, 115 N. W. 869; *Am. S. Co. v. Pauly,* 170 U. S. 133, 144, 18 Sup. Ct. 563. We think the two provisos referred to should be held to be conditions subsequent which the defendant must plead and prove as part of its defense, if it relies on them to defeat the plaintiff's cause of action. *Redman v. Ætna Ins. Co.* 49 Wis. 431, 435, 439, 4 N. W. 591; *Johnston v. Northwestern L. S. Ins. Co.* 94 Wis. 117, 119, 68 N. W. 868; *Goldman v. Fidelity & D. Co.* 125 Wis. 390, 392, 395, 104 N. W. 80; *French v. Fidelity & C. Co., supra.* These cases, if not strictly in point in the case at bar, certainly establish a principle that is applicable to it. There is no recital in the bond declaring the clauses to be conditions precedent, and where two constructions are admissible the court should lean toward that which obviates a forfeiture.

We deem it unnecessary to discuss the other point raised by appellant's counsel.

*By the Court.*—Judgment affirmed.

The following opinion was filed June 21, 1911:

KERWIN, J. (*dissenting*). The majority opinion holds that there was evidence to warrant the court below in direct-

ing a verdict for the plaintiff. . The correctness of this conclusion depends upon whether certain admissions of the agent, Greene, made after his resignation and when not in the employ of the plaintiff, were admissible against the defendant. On the 17th day of April, 1908, Greene as principal and the defendant as surety executed to the plaintiff a bond in the sum of $5,000, conditioned that said Greene would, in the position of state agent in the plaintiff's service, make good to the plaintiff within sixty days any loss sustained by plaintiff "by larceny or embezzlement committed by the employee [Greene] during a term commencing on the first day of February, 1908, at 12 o'clock noon, and ending upon the first day of February, 1909, at 12 o'clock noon." Greene remained in the employ of plaintiff until November 1, 1908, at which date he resigned and abandoned the employment.

The first question presented is, how far, if at all, the admissions were competent as against the defendant surety. Without this evidence plaintiff was not entitled to a directed verdict. The general rule is well established that admissions of a principal are not binding upon the surety unless made in the course of the employment covered by the undertaking of the surety. But it is held by the majority opinion that since the principal was bound to account even after his resignation and withdrawal from the employment covered by the bond, his admissions as to prior misappropriation of money were admissible. True, the duty under a contract to perform always remains and can only be satisfied by performance. And it may be admitted that the duty of Greene to account and pay over what under the contract should be found due on such accounting continued after his resignation. But the amount of shortage, if any, or state of account could not be proved by the statements of Greene, made without the sanction of an oath, detailing past transactions after the term of his employment had ceased, such statements not being part of the *res gestæ*. The evidence relied upon in support of the majority opinion is an admission made by Greene in December, 1908, to the

effect that he had prior to that time collected and used $2,800 of the money of plaintiff; also admissions made May 17, 1910, to the effect that a statement of account compiled and presented to him by the agent of plaintiff showing a balance in favor of plaintiff was correct; and further that he had collected and retained such balance. If these admissions be incompetent it is clear that the plaintiff made no case, and the judgment below should have been reversed. I think that the overwhelming weight of authority establishes the incompetency of these admissions. They were made after Greene's term of employment had ceased, and were merely statements of past transactions or defalcations in the course of Greene's employment before he had resigned, and whether he was still under obligation to account or not would not make his admissions relating to such past transactions, without the sanction of an oath, competent against the defendant. The rule is well stated in 1 Greenleaf on Evidence (16th ed.) § 187, as follows:

"We are next to consider the admissions of a principal, as evidence in an action against the surety, upon his collateral undertaking. In the cases on this subject the main inquiry has been, whether the declarations of the principal were made during the transaction of the business for which the surety was bound, so as to become part of the *res gestæ*. If so, they have been held admissible; otherwise not. The surety is considered as bound only for the actual conduct of the party, and not for whatever he might say he had done; and therefore is entitled to proof of his conduct by original evidence, where it can be had; excluding all declarations of the principal, made subsequent to the act to which they relate, and out of the course of his official duty. Thus, where one guaranteed the payment for such goods as the plaintiffs should send to another, in the way of their trade, it was held, that the admissions of the principal debtor, that he had received goods, made after the time of their supposed delivery, were not receivable in evidence against the surety. So, if one becomes surety in a bond, conditioned for the faithful conduct of another as clerk, or collector, it is held, that, in an action on the bond

against the surety, confessions of embezzlement made by the principal after his dismissal, are not admissible in evidence; though, with regard to entries made in the course of his duty, it is otherwise."

To the same effect is 1 Taylor, Ev. §§ 785, 786, and cases cited; 1 Phillips, Ev. (5th Am. ed.) 436 (*526).

The rule laid down in Greenleaf and other text-books is supported by the authorities generally, English and American. The theory of the authorities seems to be that all evidence as to what the principal said he had done in the past should be excluded, and the only testimony admitted under this head what the principal in fact did in the course of his employment and such statements as were made in connection with the acts done in the course of his business and constituting part of the *res gestæ;* therefore the surety cannot be bound by the mere statements of the principal made subsequently to the acts done and as a narrative of them. The reason of the rule seems obvious when we consider the well settled doctrine that hearsay evidence is not competent generally, and admissions by principal not supported by the sanction of an oath rarely admissible against the surety. 1 Taylor, Ev. § 786 and cases cited. A brief review of some of the leading cases quite analogous to the case at bar will illustrate the principle applicable to the instant case.

*Smith v. Whittingham,* 6 Carr. & P. 78, was an action on bond to charge surety for failure to account by principal. After his discharge admissions as to correctness of account were held incompetent against surety. The court said (page 80): "This is not an account current, it is only an admission made by Fisherwick after his discharge of what he had embezzled; and though it would have been evidence against Fisherwick, it is not so against the defendant." This is a leading case and cited with approval generally in this country.

*Hatch v. Elkins,* 65 N. Y. 489, was an action on a bond of

indemnity. The accounts were offered in evidence and ob-
jected to, and the question was as to their competency. In
other words, whether, since the relation of surety and princi-
pal existed, the admissions of the principal were competent
against the surety. It was held that the declarations of the
principal were admissible only when part of the *res gestæ,*
and admissions made, not during the transaction of business
but subsequently, were not competent. Referring to cases
cited the court said (page 499): "These cases all hold that
the declarations of the principal bind the surety only when
they are part of the *res gestæ* in reference to which the surety
has covenanted, but that his subsequent admissions, not part
of the *res gestæ,* do not bind and are not competent evidence
against the surety."

The following cases quoted from are quite similar in their
facts to the instant case:

In *Lee v. Brown,* 21 Kan. 458, at page 461 the court said:
"This admission and settlement were after the default of Lee.
These matters referred to past occurrences; they had no con-
nection with the acts to which they related, except as a narra-
tive or admission of what Lee had done at dates prior thereto,
and ought not to have been received as evidence so as to bind
his sureties; for it was the acts of Lee, and not his admissions
or declarations, for which his sureties were bound."

In *Knott v. Peterson,* 125 Iowa, 404, at page 407 it is said:
"The bond was not to be responsible for any declaration or
admissions of the principal, but for his conduct only. Hence
it is only his conduct in carrying on the business, or declara-
tions accompanying his acts while so engaged, that are admis-
sible in evidence against his surety."

*Wieder v. Union S. & G. Co.* 42 Misc. 499, 86 N. Y. Supp.
105: "The rule seems to be well settled that a party holding an
indemnity cannot prove the loss sustained by him, for which
he seeks to hold the surety liable, by the mere admissions or
statements of the principal. 'The declarations of the princi-
pal made during the transaction of the business for which the

surety is bound, so as to become part of the *res gestæ,* are competent evidence against the surety; but his declarations subsequently made are not competent.' "

*Trousdale v. Philips,* 2 Swan (Tenn.) 384: "In order to make the declarations and statements of the principal good against the surety, in these kind of bonds, they must be made when the business is transacted, and in connection with it, so as to become a part of the *res gestæ.* They can be admitted on no other principle. The surety is bound for the acts and conduct of his principal, and not for what he may say he had done."

*Shelby v. Governor,* 2 Blackf. 289, at page 290: "On the trial, the plaintiff introduced a witness to prove that Weathers told him that he had collected the money in controversy. . . . If Weathers, while officially acting in relation to the receipt of this money, stated that he had received it, such statement would form a part of the *res gestæ,* and would be evidence to prove the act of receiving; and would therefore be admissible against his sureties. But declarations made by him at any subsequent period, would have no connection with the act, and could not be introduced as evidence of the act, so as to bind his sureties; for it is his acts, and not his admissions or declarations, for which his sureties are bound."

*Union Sav. Asso. v. Edwards,* 47 Mo. 445, at page 449: "Had the suit been against the sureties alone, the evidence would have been clearly inadmissible. It is not within the power of the principal, after a transaction is past and gone, to make admissions to the detriment of his sureties."

To the same effect are *Blair v. Perpetual Ins. Co.* 10 Mo. 559; *Eichhold v. Tiffany,* 20 Misc. 680, 46 N. Y. Supp. 534; *Ayer v. Getty,* 46 Hun, 287; *Wheeler v. State,* 9 Heisk. 393; *Dobbs v. Justices,* 17 Ga. 624; *Bocard v. State ex rel. Stevens,* 79 Ind. 270; *Lewis v. Lee Co.* 73 Ala. 148; *Chelmsford Co. v. Demarest,* 7 Gray (73 Mass.) 1; *Tenth Nat. Bank v. Darragh,* 3 T. & C. 138, 1 Hun, 111.

The majority opinion endeavors to distinguish the instant

case from the authorities cited upon the ground that the agent was obliged to account, and therefore his admissions as to correctness of the account presented to him by the agent of plaintiff, and his further admissions that he converted funds, were competent.

It may well be that the reports and accounts made by the agent, Greene, before resignation and in the course of his employment were competent, and that if such reports and accounts had shown a misappropriation of funds a *prima facie* case would have been made against the defendant. But I think it clear under the authorities that the admissions supplementing the account, made after the reports and accounts had been made, were no part of the *res gestæ,* hence not competent evidence against the defendant surety. Had the admissions as to correctness of account and conversion by the agent been made at or about the time the reports and accounts were made and while the agent was in the discharge of such employment, doubtless such admissions would have been competent against the defendant as part of the *res gestæ.*

The admissions must be contemporaneous with the act in order to constitute part of the *res gestæ.* 3 Wigmore, Ev. §§ 1757, 1772, 1773, 1774, 1776, and cases cited; *Stetson v. City Bank,* 2 Ohio St. 167, and cases cited; 1 Greenl. Ev. §§ 108, 110; *Shelby v. Governor,* 2 Blackf. 289; *Hotchkiss v. Lyon,* 2 Blackf. 222; *Ward v. Suffield,* 5 Bing. N. C. 381; *Evans v. Beattie,* 5 Esp. 26; *Longenecker v. Hyde,* 6 Bin. 1; *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 99 N. W. 366.

With all the diligence of the distinguished counsel for respondent and the court, but one case, *Father Matthew Y. M. T. A. & B. Soc. v. Fitzwilliam,* 12 Mo. App. 445, is cited which appears to support the majority opinion. I am not clear that that case is authority for the majority opinion here. It is true the report or statement was made after the removal from office of Fitzwilliam, but the statement included no time not covered by the bond, and the bond provided that such a statement should be made at the expiration of the term.

Besides, it does not appear clearly whether the statement was made from records properly kept. But if the case is authority for the majority opinion in the instant case, in my opinion it is unsupported by reason or authority and should not be followed.

The other authorities cited in the majority opinion (*Townsend v. Everett,* 4 Ala. 607, approved in *Lewis v. Lee Co.* 73 Ala. 148; *Jenness v. Blackhawk,* 2 Colo. 578; *Wyche v. Myrick,* 14 Ga. 584; *Douglass v. Howland,* 24 Wend. 35; and 2 Wigmore, Ev. § 1077) do not appear to add strength to the opinion of the court. The point in *Townsend v. Everett,* *supra,* pertinent is that the annual statement of the county treasurer, which by law he was bound to make, was evidence against his surety. On page 611 (4 Ala.) the court says:

"We do not consider it necessary, in this case, to go into the inquiry how far the surety is bound by the declarations of the principal, made in reference to his conduct as treasurer, whilst in office; as he certainly is bound by those acts which, as treasurer of the county, his principal was bound to perform, and for the performance of which he was surety. The statute requires the treasurer to account with the commissioners court annually, and upon his resignation or removal from office, to state the account, and deliver the money and other effects of the county to his successor, and these acts when done are as obligatory on the surety as on the principal."

*Lewis v. Lee Co.* 73 Ala. 148, referred to in the majority opinion as approving *Townsend v. Everett,* 4 Ala. 607, is a strong case in support of this dissent, as I understand it.

*Jenness v. Blackhawk, supra,* involved the question of declarations of a principal in an official bond as evidence against the sureties when made in the performance of some official act or duty and in reference thereto. The court at page 585 (2 Colo.), referring to a case of declarations of the principal in an official bond, lays down the doctrine that the better rule limits the operation of such declarations against sureties to the case in which they are made in the performance of some official act or duty, and in reference thereto, and that they

must be part of the *res gestæ*. The court further says (page 586) : "The sureties obligate themselves to be answerable for what the principal does in his office; his official acts may, therefore, be shown to charge them; every declaration, accompanying and explanatory of the act, is part of it."

*Wyche v. Myrick* and *Douglass v. Howland, supra,* contain nothing contrary to the general rule stated in this dissent.

2 Wigmore, Ev. § 1077, treats, among other subjects, of principal and surety, but I find nothing in it contrary to the rule laid down in the cases heretofore cited.

Conceding that the statement of account was competent because the reports from which it was made up were made by the agent, Greene, during the discharge of his duties, such statement is clearly insufficient to charge Greene with larceny or embezzlement, because the evidence is undisputed that it is merely a report of the business done by the agent, Greene, and not of premiums collected.   Under the conditions of the bond the surety was only liable for larceny or embezzlement of the agent and not for loss otherwise occurring, therefore the amount of premiums appearing upon the account stated was not sufficient to charge Greene with larceny or embezzlement. *Travellers' Ins. Co. v. McConkey,* 127 U. S. 661, 8 Sup. Ct. 1360; *Germania F. Ins. Co. v. Deckard,* 3 Ind. App. 361; *Lycoming F. Ins. Co. v. Schwenk,* 95 Pa. St. 89; *Gauch v. St. Louis Mut. L. Ins. Co.* 88 Ill. 251; *Dupin v. Mutual Ins. Co.* 5 La. Ann. 482; *Weidner v. Standard L. & A. Ins. Co.* 130 Wis. 10, 110 N. W. 246.   Therefore, as conceded in the majority opinion, the admissions of Greene after his resignation charging himself with conversion were necessary to make a case, and, these admissions being incompetent, no case was made.   I think, therefore, the judgment should be reversed.

I am authorized to say that Mr. Justice TIMLIN concurs in the foregoing dissent.

A motion for a rehearing was denied October 3, 1911.