PAGEL, Respondent, vs. UNITED STATES CASUALTY COM-
PANY, Appellant.

*September 15—October 6, 1914.*

*Accident insurance: Construction of policy: Warranty in applica-*
*tion: Presumption against suicide: Evidence: Sufficiency: New*
*trial: Newly discovered evidence: Discretion.*

1. While contracts of insurance should be construed as other con-
   tracts with a view of arriving at the intention of the parties
   from the language used, still all provisions, conditions, or ex-
   ceptions which tend to work a forfeiture should be construed
   most strongly against the party preparing the contract and
   for whose benefit they were inserted.
2. A warranty by the insured in his application for an accident pol-
   icy that his weekly wages were "in excess of the weekly in-
   demnity named in all the accident and health and sickness
   and benefit policies and certificates carried and applied for by
   me," is *held*, in this case, to have been intended to refer only
   to other policies and applications, and not to the policy then
   applied for.
3. A forced construction should not be adopted in such a case to
   avoid the policy, where the statement · in the application was
   made in good faith without any intention to misrepresent.
4. Where the death of a person was caused by the discharge of a
   revolver in his own hands under such circumstances that it
   .may or may not have been intentional, the presumption is that
   the shooting was accidental. In this case a finding by the
   jury that the wound which caused death was not intention-
   ally self-inflicted is *held* to be supported by the evidence.
5. A motion for a new trial on the ground of newly discovered evi-
   dence is addressed to the sound discretion of the court, and
   its ruling will not be disturbed unless there is an abuse of
   discretion.

APPEAL from a judgment of the circuit court for Mara-
thon county: W. B. QUINLAN, Judge. *Affirmed.*

This is an action upon an accident indemnity policy to re-
cover the death benefit provided in a policy issued to Arthur
A. Pagel, deceased, payable to *Johanna K. Pagel,* mother of
said Arthur A. Pagel, the beneficiary named in said policy.

The answer admits the issuance of the policy, but sets up a breach of warranty in the application alleged to be part of the policy, that the weekly wages of the insured were in excess of the weekly indemnity provided in said policy, whereby the policy was avoided and made of no effect; also that the policy was without force by its terms, because the injury which resulted in the death of the insured was not accidental, but intentional and self-inflicted; also that before the commencement of the action defendant offered to return the premium paid, which offer was not accepted, and had since the action was commenced made a tender of the premium and interest, which was refused.

The jury found that the wound which caused the death of said Arthur A. Pagel was not self-inflicted with the intention on his part of taking his life.

Motions were made to change the answer of the jury to the question submitted, for judgment for defendant, and also for a new trial, which motions were overruled and judgment ordered for plaintiff on the verdict. Judgment was entered accordingly, from which this appeal was taken.

For the appellant there were briefs by *Brown, Pradt & Genrich,* and oral argument by *L. A. Pradt.*

For the respondent there was a brief by *Kreutzer, Bird, Rosenberry & Okoneski,* and oral argument by *C. B. Bird.*

KERWIN, J. The policy in suit was executed on the 1st day of May, 1912, to the deceased, Arthur A. Pagel, son of the plaintiff, for one year, and provided a death benefit of $3,750 payable to the plaintiff. The insured, Arthur A. Pagel, was twenty years of age March 12, 1912, and was on August 19, 1912, the time of his death, living with plaintiff. Sunday afternoon, August 18, 1912, the deceased complained of not feeling well and consulted a physician. Monday morning following he told his mother he was not feeling well, whereupon she advised him to remain in bed and not

go to work. He ate some breakfast and remained about the house during the morning, went with his sister into the garden during the forenoon to pick corn for the noon meal, and later his sister informed him that a friend who had borrowed one of his guns had returned it and suggested whether he had looked at the gun since its return to ascertain whether it was clean. Arthur then went upstairs where his guns—of which he had several—were kept. After he had been upstairs where his guns were for some little time, his sister heard a noise and informed her mother of the fact, and her mother went up to the apartment and discovered Arthur lying on the floor with a bullet wound back of his left temple, unconscious, and an automatic revolver lying five or six inches distant from his hand. He never regained consciousness and died from the effect of the wound.

The policy contained the following provision:

"Provision D. . . . This policy does not extend to nor cover any . . . loss resulting from any means or act which, if used or done by the insured while in possession of all mental faculties, would be deemed intentional or self-inflicted. . . ."

The application contains the following:

"(k) My weekly earnings from the occupation stated above are in excess of the weekly indemnity named in all the accident and health and sickness and benefit policies and certificates carried and applied for by me, except as follows: No exceptions.

"(l) I have no accident or health or sickness or benefit insurance, and I have no application for accident or health or benefit or life insurance pending, except as follows: No exceptions.

.     .     .     .     .     .     .     .     .     .     .

"(v) I agree that this insurance shall not take effect until this application is accepted by the company at its home office in the city of New York and policy issued."

1. It is insisted by appellant that the policy was void because of false warranty in the application respecting the

weekly earnings of the deceased, Arthur A. Pagel.   It is un-
disputed that such weekly earnings were, at the time appli-
cation was made, only $8 per week.  Whether there was
false representation turns on whether deceased represented
that his weekly earnings were more than $8.   It is argued
that under provision "k" in the application, above quoted, he
did so falsely represent.   We do not think the contention is
tenable.   We think it clear upon the undisputed evidence
that no breach of provision "k" was established.

While contracts of insurance should be construed as other
contracts, with a view of arriving at the intention of the par-
ties from the language used, still all provisions, conditions,
or exceptions which tend to work a forfeiture should be con-
strued most strongly against the party preparing the contract
and for whose benefit they were inserted.   *French v. Fidelity
& C. Co.* 135 Wis. 259, 115 N. W. 869; *United American F.
Ins. Co. v. American B. Co.* 146 Wis. 573, 131 N. W. 994.

It is quite clear that provision "k" was intended to refer
to all other accident, health, sickness, and benefit policies and
certificates, but was not intended to include the application
for the instant policy, and that the deceased did not intend to
represent that his weekly earnings were in excess of the in-
demnity stated in the policy then applied for.   The answer
following "k" tends to show that the applicant did not in-
tend to include the instant application and policy in his an-
swer, because he answered under "l" that he had no insur-
ance and no application pending.   This answer plainly
shows, and must have so informed the agent of defendant who
took the application, that deceased did not include the pend-
ing application in his answer.

The testimony of the agent as to how the questions were
asked and answered is as follows:

"I asked him whether he had any other insurance policies,
life, health, or accident, and he replied 'None at all.'   I read
the questions to him and he answered as I read them to him.
I don't think he asked me to interpret any of them.   He

didn't answer 'No exceptions,' but he said 'No,' and I put it in that form.    And it was after I asked him whether he had any other health or accident policies that he answered 'No.' My method of taking applications is, after I filled out the application the applicant signs it and it then becomes an application, and I send it to the company to pass upon it."

It will thus be seen that the only question to which the insured made direct answer was that he had no other life, health, or accident policy.    The proof shows that the agent filled in the words in the answer "No exceptions," and says he does not know whether the deceased read the application or not.    The agent was acting for the defendant and ought to have known that the applicant, under the form of answers "k" and "l," would be most likely to understand that the questions had reference to policies or applications completed and in existence at the time of the inquiry.    It was very easy to have so framed the question as to leave no room for misunderstanding.

The construction claimed by defendant is a forced construction and should not be adopted to avoid a policy made in good faith without any intention on the part of the applicant to misrepresent.    *Johnston v. Northwestern L. S. Ins. Co.* 94 Wis. 117, 68 N. W. 868; *French v. Fidelity & C. Co.* 135 Wis. 259, 115 N. W. 869; *United American F. Ins. Co. v. American B. Co.* 146 Wis. 573, 131 N. W. 994; *Penn Mut. L. Ins. Co. v. Mechanics' S. B. & T. Co.* 72 Fed. 413; *Newton v. Southwestern M. L. Asso.* 116 Iowa, 311, 90 N. W. 73.

There are several other reasons advanced in the brief of counsel for respondent why the representation, even if made, constitutes no defense, but we shall not discuss them, since we think it was not established that any false representation was made.

It may be well, however, in passing to refer to sec. 4202m, Stats., which obviously was intended by the legislature to cut off many technical defenses.    See, also, construction

placed upon similar statutes.    25 Cyc. 807; *Everson v. General A., F. & L. A. Corp.* 202 Mass. 169, 88 N. E. 658.

2. It is contended that the finding of the jury that the wound which caused the death of the deceased, Arthur A. Pagel, was not intentionally self-inflicted is not supported by the evidence.    The learned trial judge in a lengthy opinion in the record reviewed the evidence and held that the verdict was well supported by the evidence, and further says that, were the question submitted to the court without the aid of the verdict of the jury, the answer of the court would be the same as the one returned by the jury.

In cases of this kind the legal presumption is that the shooting was accidental, and that presumption must be overcome by evidence.    But it is insisted by counsel for appellant that it is a physical impossibility that the wound could have been inflicted accidentally.    This is a very broad claim and out of harmony with the established facts in the case. The learned trial judge in his opinion, in treating of this point, said:

"I have considered the position of the wound in the head. The testimony shows he was right-handed; that the bullet entered back of his left temple.    This, in my judgment, strengthens the theory of accidental death from the fact that the revolver used—which was in evidence—was one of the latest models of the automatic type, requiring, when it was discharged in the usual and ordinary way, the pressing of the trigger and pulling the handle back against the palm of the hand.    Now if he desired to take his own life, the idea suggests itself to me that it would have been more probable and more in keeping with the intent to suicide, while he had the revolver in his right hand, to place it at his right temple in case he formed the intent to have the bullet enter his head near the temple, than it would be to throw his right arm forward, up and around so as to reach his left temple, as it would be the most natural to use the means to accomplish the act with the least resistance; and while it may be argued that it is unusual for a person who is familiar with the use of fire-

arms to suffer an accident of this kind, yet perhaps his familiarity and acquaintance with the use of the gun induced his negligence."

We have examined the evidence with care and cannot say that the decision of the trial court sustaining the finding of the jury is clearly wrong. *Krogh v. Modern Brotherhood,* 153 Wis. 397, 141 N. W. 276.

3. It is further insisted that prejudicial error was committed in refusing a new trial on the ground of newly discovered evidence. On the motion counter affidavits presented by the plaintiff were used. It is claimed that some of the facts set up in the plaintiff's counter affidavits would not be admissible in evidence, while other facts stated therein would be. The court below denied the motion for a new trial on three grounds: First, that due diligence was not used to produce the evidence on the trial; second, that the newly discovered evidence was cumulative; and third, that there was no probability that the new trial would produce a different result.

It is plain upon the affidavits that the evidence of the newly discovered witness would merely raise a conflict in the evidence. The court below in passing upon the motion for a new trial said:

"I am satisfied that upon a new trial, where the evidence of the proposed new witness would be submitted to the jury, the jury would be justified in making the same findings and in all probability the result would be the same."

Motions of this kind are addressed to the sound discretion of the court and the ruling should not be disturbed unless there is an abuse of discretion.

We are convinced that there was no abuse of discretion in denying the motion for a new trial. We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.

MARSHALL, J., dissents.